HENRY BARTLING *et al.*

*v.*

FREDERICK BRASUHN *et al.*

*Filed at Mt. Vernon March 29, 1882.*

1. NOTICE—*by possession of land.* The actual possession of land is notice to all persons dealing with it of whatever rights the possessor has in it, and a person buying land from the holder of the legal title, with notice that he holds such title merely as a security for money loaned, may be treated the same as his grantor, and will take the premises subject to redemption.

2. MORTGAGE—*proof to show title is held as a security.* To establish a deed absolute in form as a mortgage, the evidence must be clear, satisfactory and convincing. But it may be shown from the conduct of the parties, and facts and circumstances attending the transaction and transpiring afterwards.

APPEAL from the Circuit Court of Washington county; the Hon. AMOS WATTS, Judge, presiding.

Messrs. CASEY & DWIGHT, for the appellants:

That Brasuhn advanced and loaned to Bartling the money to complete the payment of the contracts for the lands, and took title to himself to secure the repayment of this money, and when repaid was to convey the land back to Bartling, is sufficient evidence to show that the party advancing the money took the legal title only as a security for the loan. *Preschbaker* v. *Feaman,* 32 Ill. 475; *Ewart* v. *Walling,* 42 id. 453; *Ruckman* v. *Alwood,* 71 id. 155; *Strong* v. *Shea,* 83 id. 575; *Ross* v. *Dumoss,* 45 id. 447.

*Laches* not imputable to those in peaceable possession: *Wilson* v. *Rodgers,* 77 Ill. 76; *Glover* v. *Fisher,* 11 id. 666; *Morgan* v. *Herrick,* 21 id. 497; *Strong* v. *Shea,* 83 id. 575.

A party's possession of land is notice of all his rights therein. *Morrison* v. *Kelly,* 22 Ill. 610; *Doolittle* v. *Cook,* 75 id. 354; *Rupert* v. *Mark,* 15 id. 540.

Mr. W. S. Forman, for the appellees:

A conveyance absolute upon its face will not be construed to be a mortgage, upon slight or contradictory evidence. *Remington* v. *Campbell*, 60 Ill. 516; *Pitts et al.* v. *Cable et al.* 44 id. 103; *Magnussen* v. *Johnson et al.* 73 id. 159.

After the lapse of ten years, upon loose statements and admissions, the court will not hold the conveyance from Bartling to Brasuhn a mortgage. The proof must be clear and convincing. *Wilson* v. *McDonald*, 78 Ill. 517; *Knowles et al.* v. *Knowles*, 86 id. 1; *Maher* v. *Farwell et al.* 97 id. 56.

Mr. Justice Scott delivered the opinion of the Court:

The bill in this case was brought by the widow and minor heirs of William Bartling, deceased, against Frederick Brasuhn and Henry Eggeman. It is set forth in the bill that William Bartling, in his life, was the owner of contracts with the Illinois Central Railroad Company for three forty-acre tracts of land, originally made to one Baldwin, who assigned them to Bartling some time in February, 1867. Bartling went into possession of the lands under the contracts, and made valuable improvements thereon, consisting of a dwelling house, stable, and other out-buildings, and thereafter resided on the lands with his family until his death, which occurred in April, 1873. It is alleged in the bill, and not denied in the answers, that Bartling made payments to the railroad company on the contracts, but the exact amount of such payments does not appear from the testimony, nor is it very material. It is further set forth in the bill, that Bartling was desirous of paying up the amount due on the contracts to the railroad company, and to accomplish that object he made an arrangement with defendant Frederick Brasuhn to obtain the amount of money necessary to make such payments. In order to secure Brasuhn for the money to be advanced, it is alleged Bartling was to assign his contracts

to him, which was done in October, 1871, and afterwards, on payment of the sum due, the railroad company caused a deed to be made to Brasuhn for the several tracts of land embraced in the contracts.    There is some conflict in the testimony as to the exact amount of money Brasuhn paid to the railroad company for Bartling before he could get a deed for the lands, but the better evidence is it was $609.20.    There is a receipt that was given in evidence, which recites a payment of $600 in September, 1871, as having been made on the contracts to J. W. Turley, agent for the railroad company. That, it will be perceived, was before the contracts were assigned to Brasuhn, and the testimony of Turley is, the signature to the receipt is not his, and to the best of his recollection Brasuhn did not, at that date, or at any other time, pay him for the railroad company the sum of $600.

It appears that in January, perhaps in 1880, Brasuhn conveyed the lands to Henry Eggeman, but the bill charges he had actual notice of complainants' rights before buying the lands.    The prayer of the bill is, that the deed from the railroad company to Brasuhn, as between him and William Bartling, deceased, be declared to be a mortgage, to secure the indebtedness of the intestate to him; that an account be taken of the sum yet remaining due to Brasuhn, after deducting payments and rents, on the sum loaned to the intestate; that the deed to Eggeman be declared void as to the heirs of Bartling, and that Brasuhn be decreed, on payment to him of whatever sum may be found to be due to him, if any, to convey the lands to the heirs of William Bartling, deceased.    The circuit court dismissed the bill, and complainants bring the case to this court on appeal.

The widow of the intestate has been in possession of the premises ever since his death, and a part of the time some of his children resided with her.    Her possession was notice to all persons dealing with the property of whatever rights she had in it.    The subsequent purchaser was distinctly

notified by the guardian of two of the heirs, with whom he negotiated the trade, of the interests of his wards,—that they would be entitled to all the surplus of the purchase money after deducting the sum claimed by Brasuhn. The case is not embarrassed by the rights of an intervening innocent purchaser, and it may therefore be treated as if the controversy was confined to the original parties to the transaction.

The question involved is one of fact. It is whether Brasuhn, by the deed from the railroad company, took the absolute estate in the property, or whether he took the title by way of security for the indebtedness of the intestate to him. The latter theory is the one best sustained by the evidence, and is most consistent with the attendant circumstances. Indeed, the conduct of the parties from the beginning is wholly inconsistent with any other hypothesis. At the time Bartling assigned the contracts to Brasuhn he had made improvements of considerable value on the premises, and there remained only an inconsiderable amount of the purchase money to be paid. It seems most unreasonable he should agree to give up his land, with its improvements, for the mere privilege of becoming a tenant of Brasuhn, and yet that is all it is claimed he was to have for his land, upon which he had paid considerable sums of money on the contracts and for the improvements he had made upon it. It is not improbable he could have sold the land outright, and saved something for himself and family.

Neither Brasuhn nor any of the parties connected with the transaction ever treated the land as belonging to Brasuhn. Soon after the death of Bartling his widow paid Brasuhn $300 on the indebtedness of her husband to him. This fact in the case is not called in question by the defence. It is not claimed the intestate owed him for anything else, other than the money advanced for him to the railroad company, and what did he take the money for if he owned the lands absolutely? No more distinct and positive recognition

of the relation of debtor and creditor between the parties could possibly have been made. Besides that, it is clearly proven, at the time of the payment of the $300, he promised, on the payment of the balance due him from the intestate, which he stated to be $900, he would make the heirs a deed for the lands. After the death of Bartling he permitted the guardians of the heirs to have charge of the lands, and authorized one of them to negotiate the sale of the lands to Eggeman, with the distinct understanding the heirs of Bartling were to have all of the purchase money over the amount claimed to be due to Brasuhn. It was so divided. It is quite improbable he would have so dealt with the land had he believed himself to be the absolute owner of it, subject to no defeasance whatever.

The rule of law is undoubtedly as defendants insist it is : that to establish a deed absolute in form is a mortgage, the evidence must be clear, satisfactory and convincing. Adhering to the strictest rule declared by the cases in this court on this subject, the evidence makes a clear case, entitling complainants to equitable relief. The direct proof, as well as the acts of the parties and the circumstances, about which there can be no misunderstanding, make it apparent the deed from the railroad company to Brasuhn, although absolute in form, was nothing more than mortgage security for the money advanced by him for the intestate to obtain the title to the lands for him. It was not to vest Brasuhn with the absolute title. This was well understood by the parties themselves, and their subsequent conduct conformed to this understanding. That the title to these lands was in Brasuhn as mortgage security, not the slightest doubt is entertained. The fact he received a payment of $300 from the widow on this very indebtedness of her husband to him, after his death, and that he permitted the guardian of the minor heirs to negotiate the sale of the property, and to retain a part of the purchase money for their use, is most convincing evidence

the lands were trust property in his hands, and was so treated by him. Any other conclusion would be wholly inconsistent with the well established facts of the case.

The decree will be reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

*Decree reversed.*