COLUMBUS C. SMITH

*v.*

SARAH J. BRITTENHAM.

*Filed at Springfield March 26, 1884.*

1. PARTIES IN CHANCERY—*party in interest must sue.* In equity, the party having the beneficial interest in the subject matter of the suit must sue in his own name for any invasion of his right with respect thereto, although the legal title may be in another.

2. SAME—*party suing must have title.* It is well settled that no one, in the absence of some statute authorizing it, can maintain a suit in chancery with respect to real estate to which he has neither the legal nor equitable title.

3. SAME—*where party seeking relief disposes of his interest pending suit—whether the cause can proceed.* If a party having an interest in land commences a suit in respect thereto, and before any hearing or disposition of the cause upon the merits voluntarily transfers all his interest to another, and the same is made to appear of record, the whole proceeding will become so defective, for want of proper parties, that no valid decree can be entered in the cause unless the complainant's assignee, by supplemental bill, or otherwise, makes himself a party complainant to the suit.

4. In this case, a former owner of land filed a bill to set aside his conveyance thereof, as having been obtained by fraud and deception, and the decree granting the relief prayed was affirmed by the Appellate Court. The record was brought to this court, when the judgment of affirmance by the Appellate Court was reversed, and the cause remanded to that court with directions to reverse the decree and remand the cause to the circuit court, with leave to amend the bill, etc., which was done; but before the reversal of the decree by the Appellate Court, the master in chancery had already made a conveyance of the land to the complainant, as required by the original decree, and the complainant, four days after the making of this deed, conveyed the premises to the law partner of his solicitor. After such conveyance by him, he filed his amended bill, upon the hearing of which the same decree was entered in his favor: *Held,* that it was error to proceed with the cause in the name of the complainant after he had conveyed his interest in the property, notwithstanding he had made a warranty deed.

5. RESCISSION—*for fraud—placing the parties in statu quo.* Where a wife is induced, through fraud and deception, to convey her lands to another in exchange for goods for her husband, who was in collusion with the other party to the transaction, and concealed from her the knowledge of the fraud, in order to have the exchange rescinded she must place the grantee *in statu quo* by a return of the goods, or an offer to return them; and she will not be excused for not first doing this, from the fact that when she discovered the fraud the goods had all been sold by her husband and his assignee in bankruptcy. In such case no right to rescind exists.

6. Where land has been exchanged for a stock of goods, if the grantor of the land wishes to rescind for fraud he must restore the property received in consideration of the land, in kind. The other party can not be compelled to reconvey, and take such compensation as a court or jury may award him for his goods. Compensation has no place in the law of rescission. If the party imposed upon can not return the goods, he must pursue such other remedy as the law affords him. The only exception to the rule is where the thing is worthless. In that case no return, or offer to return, is necessary.

7. PURCHASER—*at judicial sale—effect of a reversal of the judgment or decree.* A purchaser of real estate under a judgment or decree, to which he is not a party, when there is no defect of jurisdiction, and the purchase is made in good faith, will hold the estate, notwithstanding a subsequent reversal on error of such judgment or decree.

8. But this rule has no application when the plaintiff in the judgment or decree, or his attorney, is the purchaser. In such case the purchaser takes the title subject to be divested by a subsequent reversal.

9. SAME—*bona fide purchaser without notice—who so regarded.* The owner of land having conveyed the same, by deed, the grantor filed a bill to set the sale aside for fraud, and obtained a decree setting the same aside, and for a reconveyance by the master in chancery. The defendant had persist-

ently asserted his rights to the property, and was in possession. Pending a writ of error to reverse the decree, the master made a deed to the complainant, of the premises, and the latter conveyed to a third person in a few days after receiving his deed. It was *held*, that this last grantee could not be regarded as an innocent purchaser without notice, and as such entitled to protection under the reversed decree. The defendant's continued possession in such case was notice of his rights.

10. SAME—*rights of real owner in possession, who is seeking reversal of decree—as against purchaser.* A party in the actual possession of land under a deed sought to be set aside, who is in good faith defending the suit for the recovery thereof, and who has taken an appeal, or is prosecuting a writ of error to reverse a decree against him, can not be deprived of the fruits of his appeal or writ of error because there has been a recovery against him in the inferior court, and by the successful claimant in that court suddenly transferring the estate to a third person. In such case he must have a reasonable time, at least, to avail himself of the right to have the highest tribunal in the State pass upon the merits of the suit.

11. JUDICIAL SALE—*master's deed under decree for a reconveyance—whether to be considered title acquired at judicial sale.* Where a deed is made by the master in chancery under a decree of court setting aside a conveyance previously made by the complainant on the ground of fraud, and ordering a reconveyance, and in default thereof that the master make such conveyance to the complainant, the title so derived by such master's deed is not one acquired at a judicial sale. The suit in such case is in the nature of an equitable ejectment brought to recover the land of which the defendant holds the legal title.

12. ATTORNEY AND CLIENT—*whether the relation exists.* Where the printed briefs of a complainant are signed "L. & H.," as counsel, and neither the complainant nor L. deny that the relation of client and attorney existed between them, the evidence of such relation thus offered will not be overcome by the testimony of H. that L. had nothing to do with the litigation in which the firm briefs were filed, and that his name was printed in the briefs without his knowledge.

13. SAME—*employment of one member of a firm—whether an employment of all.* Except where there is a special understanding to the contrary, the employment of one member of a legal firm is the employment of all, and the client is entitled, whether he specially consults all or not, to have the benefit of their united skill and judgment in the management of his business.

14. FRAUD—*what is evidence of fraud.* On bill to rescind a contract for the exchange of land for a remnant of a stock of merchandise, the goods to be invoiced and taken at cost price, the proof showed that the goods, when received, were of considerably less value than the invoice price, which was relied on as evidence of fraud: *Held*, that such evidence failed to establish the charge of fraud, or that the goods were not delivered at the original cost

price.    The original cost may have been greatly in excess of their value when exchanged.

15.   SAME—*who may avail of it.*   If goods are sold to a husband, so that they become his on delivery, the wife, who makes payment of the price out of her own property, can in no legal sense be injured by the vendor failing to deliver any part of such goods, or by any fraud practiced on the husband. He, alone, is the injured party, and he alone can sue for the fraud or failure to deliver to him all the goods he purchased.

16.   VARIANCE—*between allegations and proof.*   Where a bill filed by a wife to rescind an exchange of land by her for goods of the defendant, for fraud and deception, is framed on the idea that she was the purchaser of the goods, it will not be sustained by evidence showing that the trade was made with her husband, to enable him to go into the mercantile business, and that she voluntarily contributed her land to pay for the goods.

APPEAL from the Circuit Court of De Witt county; the Hon. GEORGE W. HERDMAN, Judge, presiding.

On the 14th day of August, 1874, Sarah J. Brittenham, the appellee, filed in the circuit court of De Witt county the original bill in this cause, against Columbus C. Smith, the appellant, to set aside a conveyance of two hundred and thirty-seven acres of land, made by her to him, on the 12th day of January, 1869, in payment of a stock of goods sold by him to her husband, John A. Brittenham, on the alleged ground said conveyance was obtained from her by means of fraud practiced on her by Smith, acting in concert with her husband.   At the December term, 1874, of the court, the appellant, having failed to answer the bill, was defaulted, and at the December term, 1876, a final decree was entered against him, in conformity with the prayer of the bill.   At the following March term Smith entered a motion to vacate the decree, and for leave to answer the bill, which the court refused to allow, and entered an order accordingly, which, on appeal to this court by Smith, was affirmed.   (See *Smith* v. *Brittenham*, 88 Ill. 291.)   As this decision did not, as was then held, affect the merits of the case as made by the bill, Smith then sued out a writ of error from the Appellate Court

for the Third District to the circuit court, which brought
before that court for review a complete record of the cause.
Upon a final hearing on the merits, the Appellate Court re-
versed the decree in so far as it ordered a writ of assistance,
but affirmed it in all other respects, and remanded the cause
to the circuit court. That court, upon the cause being re-
placed upon its docket, at its March term, 1879, ordered
another writ of assistance, from which order Smith prose-
cuted an appeal to the Appellate Court, where the order of
the circuit court was affirmed, and this court, on appeal by
Smith, affirmed the judgment of the Appellate Court. (See
*Smith* v. *Brittenham*, 94 Ill. 627.) Smith then sued out a
writ of error from this to the Appellate Court, by which the
entire record in the case was for the first time brought before
this court for review. The cause was heard and determined
at the March term, 1881, of this court. Upon an examina-
tion of the case, as then presented, the conclusion was reached
by this court that the original bill was fatally defective, and
insufficient to support the decree, and on that ground the
judgment of the Appellate Court was reversed, and the cause
remanded, with directions to the Appellate Court to reverse
the decree and remand the cause to the circuit court, with
leave to amend bill, etc., which was accordingly done. (See
*Smith* v. *Brittenham*, 98 Ill. 188.) It appears, however, before
the reversal of the decree by the Appellate Court, in pursu-
ance of the directions of this court, the master in chancery
had already made a conveyance of the land in question to
Mrs. Brittenham, as required by the original decree in the
cause. This conveyance was made on the 31st of March,
1879. Four days after the making of this deed, to-wit, on
the 3d of April, 1879, Mrs. Brittenham conveyed the prem-
ises to Harvey E. Husten, the law partner of William E.
Lodge, who, it is conceded, was at the time one of Mrs. Brit-
tenham's solicitors in the case, and it is also admitted that
Husten's name, as well as Lodge's, appears on the briefs filed

in the cause on her behalf, though Lodge testifies Husten personally had no connection with it.

Upon re-docketing the case in the circuit court, the complainant amended her bill, which was answered by Smith, admitting the sale of the goods in exchange for the land, but denying all fraud or improper conduct on his part. He also filed a cross-bill, praying a cancellation of the deed from Mrs. Brittenham to Husten, and other relief. The general outline of the amended bill does not differ materially from the original bill, as set out in the opinion in this case in 98 Ill. 188. It charges, in substance and effect, that complainant was the owner of the land in controversy, having acquired it by inheritance from her father; that Smith owned a stock of goods at Wapella, and that her husband, John A. Brittenham, was about starting a general store at Monticello, Illinois; that Smith made a proposition to trade his stock of goods for said land; that she visited Wapella, and there agreed to exchange said land for said stock of goods, upon the following terms: Smith to take the land at $14,000, and pay for the same at that price in said goods, at their wholesale price; that Smith agreed to invoice the goods at their wholesale cost price, and if they exceeded $14,000, she was to pay the excess, and if they fell short, Smith was to pay the deficit; that she was unacquainted with the price of such goods; that she returned home, and John A. Brittenham remained at Wapella to assist in taking the invoice of said goods; that John A. Brittenham was subject to fits of distraction, and of unsound mind, and incapable of doing business; that Smith, knowing the condition of his mind, induced him to guess or lump the stock of goods and fixtures at $14,000, instead of invoicing them according to the terms she had agreed on; that Smith and Brittenham, well knowing that she would not convey said land if she knew that said goods had been lumped or guessed off, and to get the goods in John A. Brittenham's hands, agreed to and did make out a false and fictitious invoice of

said goods, showing them to be worth, at wholesale prices, $14,000, when the goods actually received by Brittenham did not exceed $6000, whereby complainant was induced to make said conveyance; that after the goods were received by Brittenham, Smith fraudulently secreted and converted to his own use the most valuable part of them, amounting in the aggregate to $4000; that she was thus damaged about $4000; that Smith, after receiving the deed, shipped the goods, to the amount of about $6000, to Monticello; that he left the invoice of the goods at Wapella, for the fraudulent purpose "of opening up and putting the goods with other goods, and prevent her from repudiating the contract;" that she did not discover the fraud practiced upon her until four or five days before the March term, 1874, of the court,—more than five years after the commission of the fraud,—when she repudiated the contract, and filed her bill for the purpose of having it set aside; "that she was prevented from discovering the fraud by the action of Smith, in colluding with her husband to guess off the goods, and then mix them up with said Brittenham's goods, without any invoice, so that she could not distinguish them;" that when the fraud was discovered she could not return the goods, for the reason that her husband and his assignee in bankruptcy had long since disposed of them.

Upon the hearing, the circuit court found the equities, both upon the amended original bill and cross-bill, with Mrs. Brittenham, and entered a decree accordingly, from which Smith has appealed to this court.

Mr. THOMAS F. TIPTON, and Mr. H. V. TIPTON, for the appellant:

Before a party can rescind a contract for fraud, he must return, or offer to return, the consideration received. The only exception is when the thing received is entirely worthless. *Smith* v. *Brittenham*, 98 Ill. 188, and authorities there cited by appellant.

A transfer of the title to land by a decree of court is not a judicial sale, and any one purchasing from either party is chargeable with notice of all that is pending in the suit, and takes subject to his title being defeated by a reversal of the decree. *Gilman et al.* v. *Hamilton et al.* 16 Ill. 225; *Talbott's Exrs.* v. *Bell's Heirs*, 5 B. Mon. 523; *Madison's Heirs* v. *Hopkins*, 12 id. 600; *Clary* v. *Marshall's Heirs*, 3 Dana, 99.

The original decree in this case was simply a divestiture of Smith's title and vesting the same in Mrs. Brittenham, and the burden of proof laid on Husten to show that he took the deed in good faith, and actually paid the money for the same previous to notice. *Roseman et al.* v. *Miller*, 84 Ill. 299; *Brown* v. *Welch*, 18 id. 343; *Moshier* v. *Knox College*, 32 id. 155; *Baldwin* v. *Sager*, 70 id. 603; *Boone* v. *Child*, 10 Pet. 209.

Husten being the law partner of Lodge, and his name appearing all the time on all briefs, he is estopped, as against Smith, to deny that he was one of the solicitors of Mrs. Brittenham. *Burnham* v. *Roberts*, 70 Ill. 19.

An attorney can not be treated as a *bona fide* purchaser, so as to be protected against a reversal of the judgment. *Hays* v. *Cassell*, 70 Ill. 669; *Mason* v. *Thomas*, 24 id. 287.

The possession of Smith at the time of the conveyance to Husten, and the litigation, then, were full notice to him of the rights Smith had to the land. He is a lawyer, and to some extent, at least, connected with the case, and he was bound to know the extent of Smith's rights. *Flint* v. *Lewis*, 67 Ill. 299; *Dyer* v. *Martin*, 4 Scam. 146; *White* v. *White*, 89 Ill. 460; *Mathison* v. *Prescott*, 86 id. 493; *Brown* v. *Gaffney*, 28 id. 150; *Riley* v. *Quigley*, 50 id. 304; *McDowell* v. *Lucas*, 97 id. 489.

The possession of land is notice to all persons dealing with the land of all the rights of the party in possession. *Morrison* v. *Kelly*, 22 Ill. 610; *Doolittle* v. *Cook*, 76 id. 354; *Rupert* v. *Marts*, 15 id. 540; *Bartling* v. *Brasuhn*, 102 id. 441.

This case has none of the elements of a judicial or execution sale, and hence the cases cited by appellee have no application. In this case the original bill contained no allegation sufficient to give the court jurisdiction to cancel the deed. *Smith* v. *Brittenham,* 98 Ill. 188,; *Fitzgibbon* v. *Lake,* 29 id. 177. See, also, *Smith* v. *Race,* 27 Ill. 393; *Alabama Conference* v. *Price,* 42 Ala. 49; *Cooper* v. *Sutherland,* 3 Iowa, 114; *Moore* v. *Neil,* 39 Ill. 256; *Frazier* v. *Steinrod,* 7 Iowa, 339; *Torrence* v. *Torrence,* 53 Pa. 505; *Long* v. *Burnett,* 13 Iowa, 28; *Stolles* v. *Middleton,* 4 Dutcher, 32; *Gerrard* v. *Jameson,* 12 Ind. 636; *Carter* v. *Waugh,* 42 Ala. 452; *Satcher* v. *Satcher's Admr.* 41 id. 26.

As a purchaser, Husten is chargeable with notice of all defects in the title papers of Mrs. Brittenham. *Thompson* v. *Blair,* 3 Mur. 583; *Graves* v. *Graves,* 1 S. & M. 165; 2 Leading Cases in Equity, 120, and cases cited; *Wilson* v. *Arnold,* 5 Mich. 98; *Morris* v. *Vanderen,* Dall. 64.

The decree having been reversed on a writ of error, the appellant is to be restored to all things which he lost by reason of the decree. *Cummings* v. *Noyes,* 10 Mass. 433; *Jones* v. *Harker,* 5 id. 264; *Goodin* v. *Tounee,* Brownell & Golds. 1072; Bacon's Abr. 390.

Husten stands simply as the assignee of whatever rights Mrs. Brittenham had, and no more. *Roberts* v. *Clelland,* 82 Ill. 538; *Reynolds* v. *Hollis,* 14 Cal. 667.

Messrs. WELDON & McNULTA, for the appellee:

Where the court has jurisdiction of the subject matter and of the parties, the reversal of the decree authorizing the sale, for error, will not affect the title of a *bona fide* purchaser for value. *Whitman* v. *Fisher,* 74 Ill. 147.

If a decree be reversed for error, it is a settled principle of the common law that the defendant shall hold the property sold. To this rule there may be an exception, and it is when the complainant has become the purchaser, and still holds

the title under his purchase. The rule can only affect the complainant or a party to the record, or one strictly occupying that relation. *Fergus* v. *Woodworth,* 44 Ill. 374.

The reversal of a decree will not affect *bona fide* purchasers under it before any proceedings have been taken to reverse it. *Mulvey* v. *Gibbons,* 87 Ill. 367; *Horner* v. *Zimmerman,* 45 id. 14; *Feaster* v. *Fleming,* 56 id. 457; *Goodwin* v. *Mix,* 38 id. 115.

A purchaser *bona fide,* is one who actually purchases in good faith. 2 Kent's Com. 512; 1 Bouvier's Law Dic. 211.

The same rule holds good when the decree vests the title without sale. *Wadhams* v. *Gay,* 73 Ill. 415.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

There are several distinct grounds upon which the decree in this case is erroneous, and it must therefore be reversed.

It is a well recognized rule that in equity the party having the beneficial interest in the subject matter of the suit must sue in his own name for any invasion of his rights in respect thereto, although the legal title may be in another. (*Frye* v. *Bank of Illinois,* 5 Gilm. 332; *Elder* v. *Jones,* 85 Ill. 384; *Moore* v. *School Trustees,* 19 id. 83.) It is also well settled that no one, in the absence of some statute authorizing it, can maintain a suit in chancery with respect to real estate to which he has neither the legal nor equitable title. (*Bowles* v. *McAllen,* 16 Ill. 30; *Hoare* v. *Harris,* 11 id. 24.) If such an interest in the complainant is indispensable to the commencement of the suit, as will be conceded, the conclusion would seem to follow that where a party having such interest commences a suit, and before any hearing or disposition of the cause upon the merits voluntarily transfers all his interest to another, and the same is made to appear of record, as is the case here, the whole proceeding will become so defective for want of proper parties, that no valid decree can be entered

in the cause until the complainant's assignee, by supplemental bill, or otherwise, makes himself a party complainant to the suit,—and this, indeed, is the well recognized doctrine and practice in such cases. *Mason* v. *York and Cumberland R. R. Co.* 52 Maine, 82.

The decree in this case, so far as it affects the title to the land in controversy, is based exclusively upon the amended bill of Mrs. Brittenham, which was not filed until the 10th day of March, 1882. At that time, as is clearly shown by the proofs, she had no interest whatever in the land, she having, on the 3d of April, 1879, conveyed all her interest in it to Husten. It was, therefore, error to proceed in the cause under the circumstances, as is abundantly shown by the authorities already cited.

It is suggested, however, that inasmuch as Mrs. Brittenham's deed to Husten contains covenants for title upon which she is still liable, notwithstanding the transfer of the lands, she may, nevertheless, by reason of her liability on the covenants, maintain the amended bill, and authorities are cited in support of this position. We do not think any of the cases cited sustain this view, and as the amended bill does not proceed upon any such a theory, we deem it unnecessary to enter upon a discussion of them. Moreover, it would be going a long ways to proceed in the case to a decree, notwithstanding her conveyance, upon the presumption she still had an interest in the subject matter of the suit, when she herself swears she has no such interest. It would, at least, be more charitable to presume there has been a release of her liabilities or her covenants.

But outside of this there are other reasons, as already indicated, why the decree should be reversed. When the case was here the last time the bill was held totally defective, for, among other reasons, it did not show a return, or offer to return, the goods received by Brittenham in exchange for the land. In the present amended bill an effort has been made

to relieve it of this objection, but in our opinion it has not been successful. The reason now assigned for not returning, or offering to return, the goods, is, that they were all sold and disposed of by Brittenham, or his assignee in bankruptcy, before the fraud of appellee was discovered. This is not a sufficient answer to the objection in a case like the present, where there has been a simple exchange of specific articles of property. In such a case it is a misapprehension to suppose that the right to rescind exists where both parties can not be placed *in statu quo*. To take the land from Smith and give it to Mrs. Brittenham, and give him in lieu of the goods a certain sum of money, such as a court or jury might think he was entitled to by way of compensation for his goods, would be, in effect, compelling him to sell his goods on terms he never consented to, and would not, in any legal sense, be a rescission of the contract. It would lack the essential element of mutuality. Compensation, as we understand it, has no place in the law of rescission. Where property has been exchanged, as in the present case, it must be restored in kind, otherwise there can be no rescission, and if the injured party is unable to do this, by reason of having sold or otherwise disposed of what he received under the contract, or any substantial part of it, he is simply in no position to ask a rescission, but must pursue such other remedies as the law affords him. The only exception to the general rule here stated,— if, indeed, it may be called an exception,—is where the thing received by the complaining party is worthless. In that case no return is required. This exception, however, is rather apparent than real; for where the thing is worthless, in a pecuniary sense, nothing is received, hence there is nothing to return. We have examined all the authorities in the briefs bearing on this question, and many others not cited, and find them entirely harmonious, and fully in accord with the view here expressed. Chitty on Contracts, (10th Am. ed.) 815, note b; Benjamin on Sales, (1st Am. ed.) sec. 452, note b;

1 Leading Cases in Equity, p. 831, part 2; 2 Pomeroy's Eq. Jur. sec. 910; *Buchenau* v. *Horney*, 12 Ill. 338; *Wolf* v. *Dietzsch*, 75 id. 205; *Smith* v. *Brittenham*, 98 id. 188.

It follows, from what we have said, whatever equities Mrs. Brittenham, or those claiming under her, may have, growing out of the alleged fraudulent contract, neither she nor they have any right to have the contract rescinded, and it therefore follows the land belongs to Smith, unless by virtue of the master's deed to Mrs. Brittenham, or the latter's deed to Husten, or by reason of their united operation, he has been deprived of the title.

The doctrine is well established, that one purchasing real estate under a judgment or decree to which he is not a party, will, where there is no defect of jurisdiction, and the purchase is made in good faith, hold the estate, notwithstanding a subsequent reversal on error of such judgment or decree. (*Whitman* v. *Fisher*, 74 Ill. 147; *Mulvey* v. *Gibbons*, 87 id. 367.) But this rule has no application where the plaintiff in the judgment or decree, or his attorney, is the purchaser. In such case the purchaser takes the title subject to be divested by a subsequent reversal. (*McLagan* v. *Brown*, 11 Ill. 519; *Fergus* v. *Woodworth*, 44 id. 374; *Mason* v. *Thomas*, 24 id. 285; *Dickerman* v. *Burgess*, 20 id. 266.) The case in hand is unlike any of those just cited, and the general rules established by them have but little, if any, direct bearing upon it. The title sought to be enforced by the bill in this case was not acquired at a judicial or execution sale, and no one connected with the suit is claiming through such a sale. The proceeding is in the nature of an equitable ejectment, brought by the complainant, to recover a tract of land, the legal title to which is conceded to be in Smith, or at least it is conceded to have been in him at the time of filing the original bill. It is not denied that if Mrs. Brittenham had made no conveyance to Husten she would hold the title to the property acquired by the master's deed, subject to the

final decision of the case in this court; but it is claimed that Husten, her grantee, occupies a better position in this respect than she would, had no such conveyance been made,—in other words, that he is a *bona fide* purchaser for value, and as such is entitled to the protection of a court of equity, and *Horner* v. *Zimmerman*, 45 Ill. 14, and *Wadhams* v. *Gay*, 73 id. 415, are relied upon to sustain the position. Waiving, for the present, the questions whether Husten is to be regarded as an attorney in the case, also, whether he is chargeable with notice of Smith's rights, and whether he has otherwise brought himself within the provisions of the law relating to *bona fide* purchasers, it may be stated in general terms, without stopping to point out all the differences between those cases and the one before us, that we do not regard the latter as being controlled by them. There is one characteristic feature in this case that does not appear in either of the others, namely, the record in this shows a determined purpose on the part of Smith, from the day he first applied to have the default set aside, to assert his rights to the property by every legal means within his power, until successful, or until the highest judicial tribunal had decided against him, and at the very time Mrs. Brittenham conveyed to Husten, an appeal had been prayed and allowed to the Appellate Court, which was not determined till long afterwards. We can not sanction the claim that where one in the actual possession of land is in good faith defending against an adverse suit for the recovery thereof, he can, merely because there has been a recovery against him in an inferior court, be deprived of all the fruits of an appeal or writ of error, by the successful claimant suddenly transferring the estate to a third party. Before the owner of a freehold estate can be compelled to surrender it to an adverse claimant, he has a right, if he desires to do so, to be heard in the highest appellate tribunal of the State, and for this purpose, where an inferior court has rendered an adverse decision against him, he must have a reasonable time, at least, to avail

himself of this right. Concede appellant's counsel did not avail themselves of the most appropriate means of bringing the case to a final hearing in this court at an earlier day, yet this should not subject him to a loss of his estate. Had appellant ceased to contest appellee's claim for any considerable length of time, or otherwise manifested a decided purpose of giving up the contest, there would be more plausibility in the position of appellee; but there is no just ground for any claim of that kind.

But waiving this view of the matter altogether, we do not think Husten is in any better position than Mrs. Brittenham would have been had she made no conveyance. Notwithstanding the statement of Lodge to the contrary, we must, upon the record before us, hold that Husten, at the time of the execution of these conveyances, bore the relation of attorney to Mrs. Brittenham. Lodge seems to have labored under the impression that the firm name of Lodge & Husten only appeared on some of the briefs filed in the cause, and that it had been placed there without Husten's knowledge or consent; but upon an examination of the record before us, we find Lodge and Husten appear of record to be attorneys in this cause, and were acting as counsel for Mrs. Brittenham as late as the 25th of July, 1881, and as neither she nor Husten himself denies that he sustained that relation to her, we must regard the record itself as the most satisfactory evidence on that question. Except where there is a special understanding to the contrary, the employment of one member of a legal firm is the employment of all, and the client is entitled, whether he specially consults all or not, to have the benefit of their united skill and judgment in the management of his business; and a reasonably fair standard of professional ethics will not allow one member of a firm to have control of the suit of the client, while another is speculating in the fruits of the litigation.

Husten can not be regarded as an innocent purchaser for another reason. At the time of the conveyance to him, Smith was not only contesting in court Mrs. Brittenham's claim to the property, but he was in the actual possession of it, claiming it as owner, and this was constructive notice to all the world of his rights in the premises, whatever they might be. *Bartling* v. *Brasuhn,* 102 Ill. 441.

There are other reasons why Husten is not entitled to protection as an innocent purchaser, but we will not stop to note them, as those already stated are amply sufficient for that purpose.

Even assuming the amended bill had been so framed as to authorize the decree in the case, which, as we have already seen, it was not, we are clearly of opinion the case made by the bill is not sustained by the proofs. The substance of the charge in the bill is, that the goods were to be invoiced and taken at cost price, and that the goods actually received at the store at Monticello, thus rated, amounted to only about $6000. Now, while the testimony of Jameson, Rhodes and Donegan, the only witnesses relied on by appellee to show a breach of the contract with respect to the amount of the goods, fix their *value* at from $4000 to $5000, they do not, nor does either of them, state or express any opinion as to what the goods would have amounted to at the original cost price. What the goods were then worth, and what they originally cost, are two very different propositions. The remnant of a stock of goods purchased, for instance, in 1865, when goods were almost fabulously high, might well not be worth over $5000 in 1869, when, if estimated at cost price, it would amount to five times that sum. The only satisfactory evidence on this point is that of Smith. He says: "At the time this trade was made, goods were high. As a general rule, prices are based on Coats' spool thread. Thread was then worth one dollar and ten cents; to-day it is fifty-five cents, or a trifle less. Prints and Indian Head sheeting

were worth fifteen and a half cents, while to-day you can buy them for five or six cents. The *stock* was taken at cost prices. Some of the goods had been on hand three or four years." In another portion of his testimony he states the invoice thus made out amounted to $14,954.80. Upon this question we are clearly of opinion the decided weight of the testimony is with appellant, and the case not being made out upon this point, it is clear there is no right of recovery.

But there is still another view arising upon the proofs which is fatal to appellee's right of recovery in this case. While the bill is somewhat ambiguous with respect to whom the goods were sold, yet it is clear the theory upon which the suit is sought to be maintained is, that the sale was made to Mrs. Brittenham, for there is no other possible view upon which such a bill could be sustained. If the goods were, in fact and in law, sold to the husband, and became absolutely his on delivery, it is very clear she could not, in a legal sense, have been injured by Smith's failure to deliver any part of the goods stipulated for under the contract. In contemplation of law the party entitled to receive the goods alone would have been injured, which, of course, was her husband. When we look at the undisputed facts in the case, in the light of the conduct of Mrs. Brittenham herself, the conclusion is irresistible that the purchase of the goods was by the husband, and that she neither had, nor did she understand that she had, any claim to or interest in the goods after the purchase. The bill itself states that her husband, John A. Brittenham,—not she and her husband,—was about to start a general store at Monticello, Illinois, and that Smith made the proposition to trade the goods for the land, and it was known to all parties that Brittenham had already purchased, or was then about purchasing, two other stocks of goods, with which, so far as the record shows, his wife had no connection whatever, which were to be put into the establishment and business about to be started at Monticello, together with the

Smith goods, which was subsequently done, without any interference or question on the part of Mrs. Brittenham. The business was carried on by him there for a year or two, and during all this time there is not the slightest proof that she had, or pretended to have, any interest in it. And even when her husband finally drifted into bankruptcy, and the remnant of these goods had passed into the hands of his assignee, she still, so far as this record shows, set up no claim to them, but quietly stood by and saw them administered in bankruptcy for the benefit of his creditors. It is hardly necessary to remark that such conduct on her part is wholly inconsistent with the idea she understood the goods to belong to her.

The substance and legal effect of the transaction, as we understand it, is simply this: Mrs. Brittenham, for the purpose of aiding her husband to establish himself in the mercantile business, voluntarily contributed the land in question to pay for the stock of goods purchased by him from Smith. Such being the legal effect of the transaction, it is clear it does not sustain the bill or the decree. In any view we take of this case we think the law is with the appellant.

The decree of the circuit court is reversed, and the cause remanded for further proceedings in conformity with this opinion.

*Decree reversed.*