Ezra B. McCagg, Executor, Appellee, v. Catherine C. Touhy, Appellant, and Patrick L. Touhy et al., Appellees.

## Gen. No. 14,505.

1. APPEALS AND ERRORS—*when mandate in foreclosure proceeding complied with*. If a decree of sale is sustained except as to an allowance of solicitor's fees but reversed as to such allowance, and if prior to the reversal a sale to a third party has been made pursuant to the decree, an order requiring the refunding of the amount of such solicitor's fees with legal interest and an order refusing to set aside the sale and an order refusing to direct a resale for the amount originally decreed less such solicitor's fees, are each appropriate, as amounting to a practical observance of the mandate in question.

2. AMENDMENTS AND JEOFAILS—*power of court to amend certificate of evidence*. There is no doubt of the power of a chancellor to amend his certificate of evidence.

3. WRITS OF ASSISTANCE—*who cannot complain of issuance of*. A former owner of the fee whose rights have been cut off by a decree of foreclosure cannot complain of the issuance of a writ of assistance to oust his tenant, such tenant not complaining of the issuance of such writ.

Foreclosure. Appeal from the Superior Court of Cook county; the Hon. FARLIN Q. BALL, Judge, presiding. Heard in this court at the March term, 1908. Affirmed. Opinion filed June 8, 1909.

WILLIAM R. CHAMBERLAIN, for appellant; ADDISON BLAKELY, of counsel.

JOHN M. BLAKELY, for appellees.

MR. JUSTICE BROWN delivered the opinion of the court.

The principal question in this case briefly stated is: Did the Superior Court of Cook county follow the mandate of the Branch Appellate Court of this district, issued in this case when it was heretofore before said court on a writ of error?

In determining this question, the exact language

of the mandate is important and should be the starting point of any discussion of the matter involved.

After the formal opening of the mandate and the disposal of a motion to dismiss the writ of error, and after ordering the striking of some matters from the transcript which had been improperly placed therein, the mandate proceeded:

"And the court being of the opinion that in the rendition of the decree aforesaid there is manifest error in so far as said decree allows to complainant the sum of $600 for solicitors' fees, therefore it is considered by the court that for that error the decree of the Superior Court of Cook county, in this behalf rendered, in so far as it allows to complainant the said sum of $600 for solicitors' fees, be reversed; in all other respects said decree is affirmed and stands in full force and effect, notwithstanding the said matters and things therein assigned for error. And it is further considered by the court that this cause be remanded to the Superior Court of Cook county with directions to that court to deny any allowance of solicitor's fees."

The situation which confronted the Superior Court when this mandate was brought to it was this:

On March 18, 1902, a decree had been entered by the Superior Court in this cause, which was a suit for the foreclosure of a certain trust deed given by Catherine C. Touhy and Patrick L. Touhy, her husband, on certain premises to secure their note of $12,000, dated November 1, 1895. Said note was overdue when said bill was filed. The trust deed ran to Arthur B. Wells, trustee. The note had belonged in her lifetime to Amanda S. Cook, and at her death came into the hands of the complainant McCagg as the executor of the last will and testament of said Amanda S. Cook. The defendants to the bill were Catherine C. Touhy, Patrick L. Touhy, John E. Gebhardt, William G. Jackson, Allan A. Gilbert, Arthur B. Wells, trustee, and Frederick Herman Gade, suc-

cessor in trust.   Gebhardt, Jackson and Gilbert were alleged to have, or to claim to have, some interest in the premises, subject to the trust deed.

The decree of March 18, 1902, on the bill taken as confessed by Patrick L. Touhy, William G. Jackson and Allan A. Gilbert, and on the answers of Catherine C. Touhy, Arthur B. Wells, trustee, and Frederick Herman Gade, successor in trust, replication thereto, and proofs and exhibits and master's report thereon, found that all the material allegations in the bill of complaint were proved; that there was due the complainant the sum of $13,721.28 and interest from the 13th day of February, A. D. 1902, the date of the master's report: "Also the sum of six hundred dollars also found due by said report as a reasonable solicitor's fee under the provisions of the instrument sued on;" and ordered, adjudged and decreed that if the defendants, or some of them, did not pay to the complainant within five days from the date of the decree the sum of $13,789.19, with interest thereon until paid, and also the costs of the suit (including the said solicitor's fees and the master's fees, which were taxed at the sum of six hundred and eighty-six dollars, whereof $86 was to be paid to the master), then the premises described in the bill of complaint (block two in Rogers Park in the city of Chicago), or so much thereof as might be sufficient to realize the amount due the complainant, principal and interest, and also the costs of the suit, including solicitor's fees and other fees, disbursements and commissions, should be sold at public auction for cash to the highest and best bidder, by a master in chancery, named, after he had given public notice of the time, place and terms of such sale by advertisement for three successive weeks, etc.

Out of the proceeds of sale, the master should retain his fees, disbursements and commissions, see, also, that all unpaid costs and solicitor's fees were paid to the persons entitled to receive the same, and then pay to the complainant, or to his solicitor of record,

the amount due under the decree, with interest, and all taxable costs advanced by the complainant if the remainder of the proceeds were sufficient; if they were not sufficient, he should apply said remainder in satisfaction of said amount due as far as it would reach, and report the deficiency; and if there were any surplus, he was to bring it into court to abide a further order in the case.

After the coming in and confirmation of the master's report of sale, in case any deficiency were shown in the amount due complainant, he was to be entitled to execution against the defendant, Catherine C. Touhy, who was declared personally liable therefor.

The usual provisions of a foreclosure decree as to redemption and the issuance of the master's deed followed.

The decree then ordered that, upon the execution and delivery of such deed, "the grantee or grantees, his or their heirs, successors or assigns, be let into possession of the portion of said premises so conveyed, and that any of the parties to the cause who might be in possession of said premises, or any part thereof, and any person who since the commencement of suit should have come into possession under them or either of them, should, on production of said master's deed and on service of a certified copy of the decree, surrender possession thereof to such grantee or grantees, his or their heirs, successors or assigns, and that in default of so doing a writ of assistance might issue in accordance with the practice of the court."

From this decree the defendant Catherine C. Touhy prayed, but never perfected an appeal.

In accordance with the terms of the decree the premises were sold at public sale by a master in chancery of the Superior Court on May 2, 1902, and by his report filed in said court on May 27, 1902, it was made to appear to said court that at said sale Ezra B. McCagg as executor of the last will and testament of Amanda S. Cook, deceased, offered and bid therefor

$14,788.21, and that that being the highest and best bid therefor, the master struck off and sold to said bidder the premises involved, and received the said sum therefor; that the master had distributed the said proceeds as follows: To John M. Blakely for taxed costs except master's fees, $15.50; retained by the master as the amount of his fees, commissions and disbursements, $299.50; to the complainant Ezra B. McCagg as executor of the last will and testament of Amanda S. Cook, $14,473.46,—said last named sum being made up of $600 for solicitor's fees as allowed in the decree, and of $13,873.46, debt and interest.

After the time of redemption had expired, namely, on August 6, 1903, a master's deed was issued by the master to Ezra B. McCagg, as executor, etc., conveying said premises.

On July 5, 1905, a writ of error was sued out from this court by Catherine C. Touhy and Patrick L. Touhy, to reverse the decree of March 18, 1902, and on May 14, 1907, the mandate quoted at the beginning of this opinion was issued from the Branch Court.

The opinion of the court in the cause, delivered by Mr. Justice Baker, is found in 134 Ill. App. 56. It closes with these words: "So much of the decree as allows to complainant $600 for solicitor's fees will be reversed; in all other respects the decree will be affirmed, and the cause will be remanded to the Superior Court with directions to deny any allowance of solicitors' fees."

The Superior Court had then before it the question how to give effect to the mandate which affirmed the decree in every particular save one. The decree had been executed. The rights of third parties under a judicial sale of the premises involved had been, *prima facie* at least, shown to exist by proceedings hereinafter more fully referred to, which had already been taken in the case in the Superior Court by Jane Creigh Wells to secure a writ of assistance shortly after the writ of error (to which she was not a party)

had been sued out of the Appellate Court. Such rights are always protected when possible. The decree, though adjudged erroneous in allowing the item of $600 solicitors' fees, had been affirmed except as to that item and to stand in full force and effect. The principal part of the decree thus affirmed was the order for sale by the master, after certain notice and on certain conditions and contingencies. The sale had taken place. Persons not affected by the writ of error held under it. Was the Superior Court to set aside the sale, oust the purchaser's assignee, and thus in effect vacate entirely the decree which had been solemnly affirmed in great part?

We cannot hold that this was its duty. But it was the theory of the appellant that this should be done. Arguing that the sale was improper, because the amount of payment which the decree required, in order to avert it, was too large by $600, she moved in the Superior Court on November 26, 1907, as appears from matter in the transcript of record, "to execute the mandate of the Appellate Court for the first district of Illinois, entered in this behalf, by ordering a sale of the premises described in said complainant's bill of complaint, said sale to be in pursuance of the decree of this court entered herein March 18, 1902, as modified by directions of such Appellate Court." And on the same day she moved "to vacate and set aside the sale had under and in pursuance of the decree entered herein by the court on March 18, 1902, for the reason, first, that said sale was void because the decree upon which it was based was invalid; second, the purchaser, McCagg, as executor, etc., the complainant in the proceeding, had notice of such invalidity; third, that said McCagg as executor, etc., was not a purchaser for value; and fourth, that said defendant has at no time had the opportunity to exercise her right of redemption of said premises from sale had under a valid decree as provided by statute."

Exactly what place these motions (made on Novem-

ber 26, 1907, and denied on the same day, from which denial an appeal was denied) have in the transcript of a record in an appeal from final orders entered, as the appeal bond recites, on the 23rd and 30th days of September, 1907, we cannot see; but they have been placed there presumably by the request of the appellant, and serve to show in detail the position which the appellant took on September 23rd and 30th on and in the motions which were then granted and denied.

The orders from which the appeal was allowed are thus described in the order allowing the appeal:

1. The order entered September 23, 1907, directing the payment into court of $762.92 for the benefit of Catherine C. Touhy.

2. The order entered September 23, 1907, overruling motion to enter decree of sale submitted on September 23, 1907.

3. The order entered herein September 30, 1907, directing further writ of assistance in favor of Jane Creigh Wells.

4. Order entered September 30, 1907, on motion of Catherine C. Touhy, praying court to execute mandate of Appellate Court by entering decree disallowing solicitor's fees, but conforming to decree of March 18, 1902, in all other respects.

The assignments of error also attack these orders. We will take them up *seriatim.*

The first order complained of was made on motion of the complainant, and reads as follows:

"This cause coming on to be heard upon motion of complainant, and the defendant, Catherine C. Touhy, appearing by her solicitor, and it appearing to the court that the solicitor's fee of six hundred dollars ($600) heretofore allowed by this court to the complainant therein was by the Appellate Court for the first district directed to be disallowed,

And it appearing to the court that the complainant therein has tendered to Catherine C. Touhy, the principal defendant herein, through her solicitor, the said sum of six hundred dollars ($600), together with legal

interest since May 2, 1902, amounting in all to seven hundred and sixty-two and 93/100 dollars, and said Catherine C. Touhy has refused to accept said sum of money;

It is therefore ordered that said complainant pay said seven hundred and sixty-two and 93/100 dollars into court for the use and benefit of said Catherine C. Touhy, to be paid over to said Catherine C. Touhy upon her request therefor, upon the clerk of this court, and the court finds that the complainant, through his solicitor, has paid to the clerk of this court said sum of seven hundred sixty-two and 93/100 dollars, in compliance with the order of this court.''

The motion alluded to in the order was a written motion of complainant ''for an order directing and granting leave to him to pay to Catherine C. Touhy, defendant in the cause, the six hundred dollars allowed to him as solicitor's fee by former order of this court, but disallowed and ordered to be refunded by the remanding order of the Appellate Court, and upon her refusal to accept the same, to pay said six hundred dollars into court for the use and benefit of said Catherine C. Touhy, and to have such order of acquittance therefor as to the court seems proper.''

It was undoubtedly a somewhat strained construction of the ''remanding order of the Appellate Court'' to say that it *''ordered''* the six hundred dollars ''to be refunded,'' but we think after all that an order of the Superior Court for such refunding was a practicable and just method of carrying the judgment that the Appellate Court did order into effect. Moreover, we think it was justified by authority.

In Soles v. Sheppard, 99 Ill. 616, solicitor's fees were improperly allowed by the Circuit Court, and the Supreme Court held that there being ''nothing to show plaintiff in error is liable for any portion of the fee allowed, the court erred in decreeing its payment.'' But the premises had been sold and bid in by the complainant in the foreclosure suit, who was the defendant in error, and the sale approved. Therefore the

Supreme Court adjudged: "The decree of the court (Circuit), therefore, so far as it allows a solicitor's fee, $175, is reversed, but it is in all things else affirmed. *And a decree for $175 with interest at the rate of six per cent per annum from the 27th day of October 1877, until paid, is rendered in this court in favor of plaintiff in error against defendant in error.*"

The Supreme Court could not have considered the last part of this order inconsistent with the partial reversal which went before, or it would not have made it an appendix thereto. It is then an authority for holding that the action of the Superior Court in the case at bar was not inconsistent with the precisely similar partial reversal of the original decree.

The appellant, however, contends that because the decree mentioned the payment of too great a sum as necessary to avert the sale, and an attempt to redeem for the sum really due complainant would have been ineffective until after the pronouncement of the Appellate Court, therefore there should be a vacation of the old sale, and a chance given her to pay the revised amount of the decree, and if there were, nevertheless, a sale, a chance to redeem for a less sum. Apart from the fact that there has been no attempt to satisfy the decree or to redeem, and no tender at any time of any sum, and the fact that the purchaser's rights under a judicial sale are always under the protection of the courts, the reasoning is unsound.

The original decree was in all respects *"affirmed"* except as to the solicitor's fees—not reversed with directions to enter a new one; and though the Branch Appellate Court might properly enough have made its order more explicit, as did the Supreme Court in Soles v. Sheppard, we do not think the Superior Court erred in its construction.

As for the matter of redemption, we cannot see that any right of the appellant was violated or, theoretically at least, even affected.

As appellee argues, "The decree ordered the prop-

erty to be sold to the highest and best bidder for cash. But it did not in any way control the amount to be bid.''

Had the redemption been made, the $600 originally going to the mortgagee would have had to be repaid, under the decision of the Branch Appellate Court, to the appellant, as it is now so repaid.

. The second order appealed from overruled the motion to enter decree of sale submitted on September 23, 1907.

This proposed decree provided ''that the decree of sale of the property hereinafter described had, under and in pursuance of the said decree of foreclosure entered herein on the 18th day of March, 1902, and reversed by the Appellate Court as aforesaid, be and the same is hereby vacated and set aside and declared null and void.''

Of course, if the first order appealed from was justified, the second one, denying the entry of this proposed decree, was also correct. It is therefore not necessary that we should pass on the other objections that could be found to the proposed decree. But we agree with this remark in the argument of appellee's counsel—''If the rights of a third party had not intervened and the Appellate Court had reversed this decree entirely, it certainly would not have done so without in effect directing that a new trial be had and the amount due under this trust deed determined, including therein not alone the principal and interest due on said note, but also all taxes and assessments paid by the holder of said note, with interest thereon.''

The third order appealed from raises a different question.

On September 30, 1907, the Superior Court entered an order in which, after reciting a petition of Jane Creigh Wells for a writ of assistance in the cause, and that notice had been given to Catherine C. Touhy, S. Rogers Touhy, and all parties in interest, it found from ''affidavits, evidence and admissions in open court, that Jane Creigh Wells became a *bona fide* purchaser

of block two in Rogers Park (the premises involved in this suit), and that her title was derived under the decree of foreclosure of March 18, 1902, and the master's deed pursuant thereto; that at the time she became such *bona fide* purchaser for value no appeal or writ of error had been prosecuted or was pending from said decree, and that by an order of the court entered July 18, 1905, she had been put into possession of all of block 2 except a piece twenty-two by thirty-one feet on the northwest corner of Clark street and Touhy avenue; that she was not in possession of this piece because the right of possession thereof was claimed by one S. Rogers Touhy under a lease from the defendant, Catherine C. Touhy, which expired September 10, 1905; that Jane Creigh Wells had, after proper service of the decree and the master's deed on Catherine C. Touhy, made demand since September 10, 1905, on S. Rogers Touhy for the possession of this excepted piece of block 2, and S. Rogers Touhy had refused to give up such possession.''

It then ordered that a writ of assistance as prayed for in said petition against said Catherine C. Touhy, S. Rogers Touhy, and all persons claiming by, through or under them, or either of them, issue forthwith, to eject and move them from this excepted portion of block 2 and put Jane Creigh Wells into possession thereof.

It is this order which is referred to in the allowance of the appeal as the ''order of September 30, 1907, directing further writ of assistance.''

The order does not seem erroneous to us.

By a previous order in the cause entered July 18, 1905, the possession of the excepted corner of block 2 had been found to be under a lease from Catherine C. Touhy, expiring September 10, 1905, and in the hearing of the petition for the order of September 30, 1907, which is appealed from, counsel for Catherine C. Touhy and for S. Rogers Touhy, as the court recites in the certificate of evidence, admitted the same thing.

The fact that Jane Creigh Wells is the wife of Ar-

thur B. Wells, who was the trustee in the trust deeds foreclosed, by itself gave her no notice of that which her husband as a party to the suit might be presumed to know, even if such knowledge would—which we do not assert—make any difference to her position herein. Even had the plaintiff in the suit been the purchaser who was demanding a writ of assistance, the citation of Smith v. Brittenham, 109 Ill. 540, would fail of point, because in that case the decree was *reversed*. In the case at bar it was *affirmed* except as to a small exception.

We do not think it necessary to discuss at length the point raised by appellant about the amendment of the certificate of evidence. There was evidence enough in the record, however it may be viewed, to justify the writ of assistance complained of. But there was no doubt of the power of the court to amend. Heinsen v. Lamb, 117 Ill. 549.

S. Rogers Touhy, the record shows, only held as the lessee of Catherine C. Touhy, nor has he appealed from the order ordering the writ of assistance. Catherine C. Touhy, who has appealed, has nothing to complain of in it.

The fourth order appealed from was one entered on September 30, 1907, reading as follows:

"On motion of solicitor for defendant Catherine C. Touhy filed herein this day to enter an order to execute the mandate of the Appellate Court of Illinois for the first district, said motion is by the court denied, an order having heretofore been entered by the court disposing of said matter in accordance with said mandate."

This of course needs no discussion in view of what has already been said by us. It was not erroneous.

If there be an irregularity in taking this one appeal from all these various orders, it is not objected to and we do not need to notice it.

The orders of the Superior Court are and each of them is affirmed.

*Affirmed.*