(December 19, 1908.)

GAYLORD W. THOMPSON, Plaintiff and Respondent, v. WALTER J. BURNS et al., Defendants and Appellants, and F. W. KETTENBACH, Defendant and Respondent.

[99 Pac. 111.]

REAL ESTATE, CONTRACT FOR SALE OF—SPECIFIC PERFORMANCE—STATUTE OF FRAUDS — EVIDENCE CLEAR AND SATISFACTORY — DEED A MORTGAGE—PAROL EVIDENCE—FINDINGS—INSUFFICIENCY OF EVIDENCE—WRITTEN AUTHORITY OF AGENT—OFFER—ACCEPTANCE—TIME OF—BINDING FORCE OF DECREE—OPTIONAL WITH PLAINTIFFS —VOID.

1. A court of equity will not decree a specific performance of a contract for the sale of land except upon clear and satisfactory proof.

2. Parol evidence is admissible to show that a deed absolute on its face is in fact a mortgage.

3. *Held*, that the finding of fact to the effect that the contract sued on was made on the 14th of September, 1905, is not supported by the evidence.

4. *Held*, that the evidence is not sufficient to show that any valid contract was ever entered into for the sale of the real estate described in the complaint.

5. If an offer to sell real estate is made by telegram, the answer must be within the time specified, and if no time is specified, it must be answered within a reasonable time, and an offer by telegram impliedly requires a quick reply by telegram.

6. An offer by telegram, sent and received on the 4th of November, requesting a quick answer, *held*, that an acceptance of the offer on the 11th of November is too late.

7. Under the provisions of sec. 6007, Rev. Stat., no estate or interest in real property other than for leases for a term not exceeding one year, nor any trust or power over or concerning it or in any manner relating thereto, can be created, granted, assigned, surrendered or declared otherwise than by operation of law; or a conveyance or other instrument in writing subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by his lawful agent thereunto authorized by writing.

8. To comply with such section, the writing must state the contract with such certainty that its essentials will be known from the memorandum itself or by reference contained in it to some other writing, without recourse to parol evidence.

9. In such contracts where the agreement for such sale shows that one of the two persons by whom it is made incurs no individual liability, but acts merely as an agent for some one else who is not named or described, specific performance thereof cannot be compelled at the suit of the principal if his relation to the transaction can only be proved by parol evidence.

10. *Held,* that the minds of the parties never met, and that no definite and certain contract was ever entered into between the parties.

11. When the specific performance of a contract is decreed, the contract is merged into the decree, and the decree must not be so entered as to leave it optional with the plaintiff whether he performs his part or not.

12. A decree for specific performance must not be so entered as to be an option on behalf of either party.

13. The evidence is insufficient to sustain the findings of the court and the judgment, and therefore the plaintiff is not entitled to a specific performance of the alleged contract.

(Syllabus by the court.)

APPEAL from the Second Judicial District, for Nez Perce County. Hon. Edgar C. Steele, Judge.

Action to enforce a specific performance of an alleged contract for the sale of real estate. Judgment for the plaintiff. *Reversed.*

James E. Babb, for Appellants.

A broker's authority to find a purchaser and in a sense make sale of the property does not authorize him to execute for the vendor a contract of sale. His authority is exhausted when he has found a purchaser on the vendor's terms. (*Castner v. Richardson,* 18 Colo. 496, 33 Pac. 163; *Brandrup v. Britten,* 11 N. D. 376-379, 92 N. W. 453; *Glentworth v. Luther,* 21 Barb. 145; *Morris v. Ruddy,* 20 N. J. Eq. 236; *Armstrong v. Lowe,* 76 Cal. 616, 18 Pac. 758; *Halsey v. Monteiro,* 92 Va. 581, 24 S. E. 258; *Holmes v. Redhead,* 104 Iowa, 399, 73 N. W. 878; *Everman v. Herndon,* 71 Miss. 823, 15 South. 135; *Stengel v. Sergeant* (N. J.), 68 Atl. 1106.)

Wherever the market value of lands is increasing rapidly and all the parties are dealing in them as a speculation, time, in negotiation and in performance of the contract, is of the

essence. (*Myers v. League,* 62 Fed. 654, 10 C. C. A. 571; *Goldsmith v. Guild,* 92 Mass. 239; *Pickering v. Pickering,* 38 N. H. 400; *Spaulding v. Fierle,* 86 Hun, 17, 33 N. Y. Supp. 402; *Waterman v. Banks,* 144 U. S. 394, 12 Sup. Ct. 646, 36 L. ed. 479; *Settle v. Winters,* 2 Ida. 226, 10 Pac. 216.)

An offer must be answered within the time specified. (*Minn. Linseed Oil Co. v. Collier White Lead Co.,* 4 Dill. 431, Fed. Cas. No. 9635; *Ortman v. Weaver,* 11 Fed. 358; *Bowen v. Mc-Carthy,* 85 Mich. 26, 48 N. W. 155; *Larmon v. Jordan,* 56 Ill. 204; *Maclay v. Harvey,* 90 Ill. 525, 32 Am. Rep. 35; Clark on Contracts, p. 40; *James & Sons v. Marion Fruit Jar & Bottle Co.,* 69 Mo. App. 219; *Taylor v. Rennie,* 35 Barb. 272.)

Parol evidence is admissible to show that a deed absolute upon its face is a mortgage. (1 Jones, Mortgages, secs. 282-342; 2 Devlin, Deeds, 1st ed., sec. 1136; *Smith v. Smith,* 80 Cal. 323, 21 Pac. 4, 22 Pac. 186, 549.)

"One who seeks to enforce specific performance of a contract is bound to establish clearly and satisfactorily the existence of the contract and its terms. If the testimony be contradictory or doubtful, a decree for specific performance will be refused. (*Deeds v. Stephens,* 10 Ida. 336-338, 79 Pac. 77; *Gates v. Gamble,* 53 Mich. 181, 18 N. W. 631; *Wright v. Weeks,* 25 N. Y. 153; *Johnson v. Kellogg,* 7 Heisk. (Tenn.) 262; *Gault v. Stormont,* 51 Mich. 636, 17 N. W. 214; *Potts v. Whitehead,* 20 N. J. Eq. 55; *Schmeling v. Kriesel,* 45 Wis. 325; *Manning v. Ayres,* 77 Fed. 690, 23 C. C. A. 405; 22 Am. & Eng. Ency. Law, 1006.) "Specific performance of a contract will not be decreed where there is strong doubt whether the parties understood the contract alike." (*Coles v. Browne,* 10 Paige Ch. (N. Y.) 526; 22 Am. & Eng. Ency. Law, 1017, 1023, 1075.)

The requirements of secs. 6007 and 6009, Rev. Stat., were not complied with in the alleged contract of sale. (*Brewer v. Horst-Lackmund Co.,* 127 Cal. 643, 60 Pac. 418, 50 L. R. A. 240, and notes; *Mentz v. Newwitter,* 122 N. Y. 491, 19 Am. St. Rep. 514, 25 N. E. 1044, 11 L. R. A. 97; *Brown v. Whipple,* 58 N. H. 229; *Grace v. Denison,* 114 Mass. 16; *Kingsley v. Siebrecht,* 92 Me. 23-33, 69 Am. St. Rep. 486, 42 Atl. 249; *Nichols v. Johnson,* 10 Conn. 192; *Phillips v. Adams,* 70 Ala. 373; *Harney v. Burhans,* 91 Wis. 348, 64 N. W. 1031; *Ryan v.*

*United States,* 136 U. S. 68-83, 10 Sup. Ct. 913, 34 L. ed. 447; *Webster v. Brown,* 67 Mich. 328, 34 N. W. 676; *Williams v. Morris,* 95 U. S. 444, 24 L. ed. 360; *Abba v. Smyth,* 21 Utah, 109, 59 Pac. 756; *Sanders v. Pottlitzer Pressed Fruit Co.,* 144 N. Y. 209, 43 Am. St. Rep. 757, 39 N. E. 75, 29 L. R. A. 431, and notes, p. 433.)

Written authority of the agent has not been shown, and this is necessary under the Idaho statute and in any transactions where a like statute exists. (*Reagan v. McKibben,* 11 S. D. 270, 76 N. W. 943; *Brandrup v. Britten,* 11 N. D. 376, 92 N. W. 453; *O'Shea v. Rice,* 49 Neb. 893, 69 N. W. 308; *Roth v. Goerger,* 118 Mo. 556, 24 S. W. 176; *Power v. Immigration Land Co.,* 93 Minn. 247, 101 N. W. 161; *Baldwin v. Schiappacasse,* 109 Mich. 170, 66 N. W. 1091; *Mumford v. McKinney,* 21 La. Ann. 547; *Kopp v. Reiter,* 146 Ill. 437, 37 Am. St. Rep. 156, 34 N. E. 942, 22 L. R. A. 273; *Castner v. Richardson,* 18 Colo. 496, 33 Pac. 163; *Borderre v. Den,* 106 Cal. 594, 39 Pac. 946; *Hall v. Wallace,* 88 Cal. 434, 26 Pac. 360; *Myres v. Surryhne,* 67 Cal. 657, 8 Pac. 523; *McCarthy v. Loupe,* 62 Cal. 299; *Duffy v. Hobson,* 40 Cal. 240, 6 Am. Rep. 617; *Folsom v. Perrin & Dodge,* 2 Cal. 602.)

Even if the plaintiff were entitled to a decree in this case, the decree as entered is erroneous. It should have either required the cash payment to be made and the mortgage and note to be delivered as a condition of its entry, or within a short reasonable date thereafter to be fixed by the court, and that, in default thereof, the action should be dismissed. (*Hidden v. Jordan,* 57 Cal. 184; *Thayer v. Wilmington Star Min. Co.,* 105 Ill. 553; *Binns v. Mount,* 28 N. J. Eq. 26; *Stevenson v. Jackson,* 40 Mich. 702; *D'Wolf v. Pratt,* 42 Ill. 216.)

Geo. W. Tannahill, and W. H. Batting, for Respondent.

"When a person adopts the unauthorized act of another made in his behalf, and has received the benefits accruing therefrom, he is held to adopt and ratify the instrumentalities by which the fruits were obtained." (*Busch v. Wilcox,* 82 Mich. 336, 21 Am. St. Rep. 563, 47 N. W. 328; and cases cited; *Johnson v. Jones,* 4 Barb. 369; *Eagle Bank v. Smith,* 5 Conn.

71, 13 Am. Dec. 37; *Griggs v. Seldon*, 58 Vt. 561, 5 Atl. 504; *Collins v. Cooper*, 65 Tex. 460; *Hubbard v. Tenbrook*, 124 Pa. 291, 10 Am. St. Rep. 585, 16 Pac. 877, 2 L. R. A. 823; *Harrison v. Missouri Pac. R. R. Co.*, 74 Mo. 364, 41 Am. Rep. 318.)

A principal may waive the statute of frauds; waiving the necessity for the contract or the agency to be evidenced by sufficient writings. (*Cosand v. Bunker*, 2 S. D. 294, 50 N. W. 84; *St. Louis K. & N. W. Ry. Co. v. Clark*, 121 Mo. 169-177, 25 S. W. 192, 26 L. R. A. 751; *Aultman v. Booth*, 95 Mo. 383, 8 S. W. 742; *Maybee v. Moore*, 90 Mo. 343, 2 S. W. 478; *Gibson v. Snow Hardware Co.*, 94 Ala. 346, 10 South. 304.)

The authority of an agent to execute a contract in the name of his principal may be proved by express authorization, or may be inferred from the course of dealing between the parties. (*Keim v. Lindly*, (N. J.), 30 Atl. 1063.) A subsequent ratification is equally as effectual as an original authority. (*Newton v. Bronson*, 13 N. Y. 587, 67 Am. Dec. 89, and cases cited; *Rutenberg v. Main*, 47 Cal. 213.)

If the execution of a deed such as Burns executed and placed in the hands of the Lewiston bank was sufficient to obviate the necessity of the contract being in writing, it also obviated the necessity of Waite's authority as agent being in writing; the Alabama statute is almost word for word identical with the Idaho statute. (*Johnston v. Jones*, 85 Ala. 286, 4 South. 748.)

An offer by letter or a telegram is a continuing offer until the letter or telegram is received. If the party accepts the offer before withdrawal, the bargain is complete. It is then a contract founded on mutual assent, and an acceptance to this effect is made and communicated when the party receiving the offer puts into the mail or telegraph office his answer accepting it. (*Kennedy v. Lee*, 3 Mer. 441; *Potter v. Sanders*, 6 Hare, 1; *Martin v. Frith*, 6 Wend. 103, 21 Am. Dec. 262; *Vassar v. Camp*, 14 Barb. 341; *Clark v. Dales*, 20 Barb. 42; *Hamilton v. Lycoming Inc. Co.*, 5 Pa. 339; *Trevor v. Wood*, 36 N. Y. 307, 93 Am. Dec. 511.)

A deed properly executed and left with the attorney of the grantor of real estate is sufficient to remove the bar of the statute of frauds in an action for specific performance where

the purchase price has been paid, and a complaint that fully sets out the contract for the conveyance of real estate, although the original contract was verbal, that was afterward merged into a different contract which is evidenced by a deed left in the hands of the attorney for the grantor for the inspection of the grantee, is sufficient upon which to base a judgment for specific performance. (*Robbins v. Porter,* 12 Ida. 738, 88 Pac. 86.)

Fred E. Butler, for Respondent Kettenbach.

SULLIVAN, J.—This action was brought to compel the specific performance of a contract for the sale of 480 acres of land situated in Nez Perce county. The defendants named in the complaint are Walter J. Burns and Mary C. Burns, his wife, the Lewiston Land & Water Co., a corporation, and F. W. Kettenbach.

The alleged contract for the sale of said land by the defendant, Walter J. Burns, who, it is alleged, was the owner thereof, is set forth in the fourth paragraph of the complaint and is as follows:

"That on the 14th day of September, 1905, the defendant, Walter J. Burns, acting through his agent, the Skinner, Mounce Co., Limited, a corporation, organized and existing under the laws of the state of Idaho, and doing a general business in real estate in buying and selling the same, and in acting as agent in the purchase and sale of real estate, did, as the duly authorized agent of the said Walter J. Burns, enter into a contract with the plaintiff for the sale by the said Walter J. Burns, to the plaintiff, of the S. ½ of the SW. ¼ and the S. ½ of the SE. ¼ of Section 5, and the NE. ¼ and the NW. ¼ of Section 8, Township 35, North, Range 5, West, Boise Meridian, containing four hundred and eighty acres of land, at the agreed price of Forty-eight Thousand Dollars upon the following terms and conditions, to wit: $500 to be paid in cash by the plaintiff, to the said Burns at the time of the making of the said contract, to wit: on the 14th day of September, 1905, and the further sum of Fourteen Thousand and Five Hun-

dred Dollars to be paid by the plaintiff to the defendant Burns. on the approval of the abstract of title to the said premises by the plaintiff, and the remainder of the said sum of Forty-eight Thousand Dollars, to wit: The sum of Thirty-three Thousand Dollars, to be paid by the plaintiff to the defendant Burns. at the end of five years from the date of the deed provided to be made by the defendant Burns to the plaintiff for said premises, said balance to be evidenced by promissory note or notes, executed by the plaintiff to defendant Burns, bearing interest. at the rate of 8 per cent per annum, payable semi-annually, and the payment of said notes to be secured by a mortgage of said real estate and premises to be executed by the plaintiff to said Burns.''

It is also alleged that at the time of the making of said contract, and pursuant to the terms thereof, the plaintiff paid to the defendant the sum of $500, by paying said sum into the hands of Skinner, Mounce & Co., a corporation, who, it is alleged, were the authorized agents of said Burns, and that. thereupon Mounce, a member of said corporation, for and on behalf of Burns, agreed to deliver to the plaintiff a good and sufficient deed of conveyance, conveying to the plaintiff said land.

It is also alleged that one F. B. Waite was the duly accredited and authorized agent and representative of said Burns, and entered into a contract with said Skinner, Mounce & Co. whereby said Skinner, Mounce & Co. were to sell said land for said Burns; and that said Skinner, Mounce & Co., as such agents, sold said land to the plaintiff on September 14, 1905, and on the payment of said $500 gave him the following receipt, to wit:

''Received, September 14th, 1905, from G. W. Thompson, Five Hundred Dollars, earnest money on sale of the S. ½ of the SW. ¼ and the S. ½ of the SE. ¼ of Section 5, and the NE. ¼ and the NW. ¼ of Section 8, Township 35, N., R. 5 W., B. M. Fifteen thousand dollars due on approval of abstract and balance to be paid at expiration of five years from. date of deed.

(Signed) ''SKINNER, MOUNCE & CO.,
''Agent.''

It is also alleged that on said date, Skinner, Mounce & Co. notified said Burns, through his agent Waite, of the payment of said sum of $500 and of the terms and conditions on which the further payments on account of the purchase price of said property were to be made, and requested an abstract of title of said property; that such abstract was. furnished; that immediately after the payment of said sum of $500, plaintiff notified said Burns through his said authorized agents, Waite and Skinner, Mounce & Co., that he was ready at any and all times to receive the title of said property from said Burns and make payments thereon according to the terms of said contract; that pursuant to the terms of said contract, Burns and his wife, did, on October 25, 1905, make and execute a deed to Thompson, the plaintiff, and placed said deed in the hands of the First National Bank of Lewiston, Idaho, to be delivered to the plaintiff upon compliance with the terms of said contract of purchase; that upon being advised of that fact, after a proper examination of abstract of title thereto, the plaintiff being able, willing and ready to comply with the terms of said contract, did on November 18, 1905, make and tender to said Burns through his said agents, Skinner, Mounce & Co., and the First National Bank of Lewiston., the sum of $14,500, together with a mortgage upon said premises for $33,000, and further tendered through said agents plaintiff's promissory notes for $33,000, payable in five years, with interest at the rate of eight per cent per annum, payable semi-annually, as in said contract provided, and then and there demanded a delivery of said deed; and that said bank, acting on the advice of said Burns, refused, and at all times since still refuses, to deliver such deed to the plaintiff; that said Burns, acting through his said agents, under date of November 20, 1905, advised the plaintiff that the premises had already been conveyed on November 14, 1905, to the defendant, the Lewiston Land & Water Co. It is alleged that said Kettenbach and the Land & Water Co., and said Waite and Burns, conspired to cheat and defraud the plaintiff out of his rights under said contract; that said Lewiston Land & Water Co. and said Kettenbach had at all times mentioned in said complaint full and complete knowledge of the rights and equi-

ties of the plaintiff in said matter, and that by reason of said wrongful acts, the plaintiff has been damaged in the sum of $50,000, and he prays for judgment for the sum of $50,000 damages, and that the deed executed by Burns to the Lewiston Land & Water Co. be held for cancellation and canceled by decree of the court; that a mortgage executed and delivered by the Lewiston Land & Water Co. to the said Kettenbach be held not a lien upon said premises, and that said Burns and his wife be decreed to execute and deliver a good and sufficient deed conveying said premises to the plaintiff, and, in the event they fail to do so, that the clerk of the court execute such deed, and for such other and further relief as may be just and equitable.

Certain motions and demurrers were interposed to the complaint by the several defendants, and overruled by the court.

The complaint was answered by the defendants, F. W. Kettenbach and Lewiston Land & Water Co., Limited, and by the defendants, Walter J. Burns and wife. Both of these answers put in issue all of the material allegations of the complaint, and definitely and specifically denied the making of any contract with the plaintiff; also, in various forms, the agency and authority of Skinner, Mounce & Co., and F. B. Waite and First National Bank of Lewiston, Idaho, and Balfour, Guthrie & Company. In addition to these denials, the answer of the land and water company and of Kettenbach, in a first, special and affirmative defense, alleged that, while the title to the land in question stands of record in the name of Walter J. Burns, the land was owned by F. B. Waite, and held by Burns only as trustee to secure the payment of indebtedness owing by the said Waite; that said Waite had had some negotiations with the plaintiff concerning the sale of said lands to him, but that the said negotiations had fallen through and never resulted in a contract, and specifically, that no note or memorandum of any contract, in writing, had been signed, either by said F. B. Waite or said Walter J. Burns, either individually or personally, or by any agent thereunto authorized in any writing signed by them or either of them; and that thereafter the said lands were sold to the defendant Lewiston Land & Water Co., Ltd., on November 14, 1905, for the sum of $50,000, $25,000

thereof paid on November 14, 1905, and the balance of the purchase price secured by a mortgage executed by said land and water company to the defendant, Walter J. Burns, bearing date December 1, 1905, which mortgage and the notes secured thereby have been assigned for a full and valuable consideration to the defendant F. W. Kettenbach, and that the defendant land and water company is the owner of the land subject to said last-mentioned mortgage, and that the plaintiff has no right, title or interest therein; that no part of the indebtedness secured by the said mortgage had been paid at the time of the filing of the answer, and that the said F. B. Waite, in his conveyance of said lands to said Lewiston Land & Water Co. warrants his title to the same, and that he had not been, but should be, made a party to the action, and that the interest of said Waite in said lands and premises was, at all times mentioned in the complaint, known to the plaintiff, and that, in case the plaintiff should recover in the action, the consideration to be paid by him in money and notes and mortgage security should be decreed to the land and water company, subject to the lien of the mortgage given by the land and water company to the defendant Walter J. Burns and assigned by him to the defendant Kettenbach.

The answer of the defendants Burns and wife, in its denials and in the special and affirmative defense, was substantially the same as that of the land and water company and Kettenbach, except as to the matter of awarding the consideration moving from the plaintiff, in case of a decree in his favor, to the defendants land and water company and Kettenbach.

The mortgage to Walter J. Burns from the land and water company, assigned to Kettenbach, having been paid after the trial and before the final decision in this action, as recited in substitution of appearances for F. W. Kettenbach, said Kettenbach ceased to have any further interest in the controversy, having been paid by the land and water company and did not appeal for that reason.

Upon the issues thus made, the case was tried by the court without a jury, and finding of facts and judgment were made and entered in favor of the plaintiff. The court found upon

all of the issues made by the complaint and the denials thereof
except the issue as to $50,000 damages, and also failed to find
upon the special defenses made by the several defendants.
The court failed to find upon the issue of damages, and that
issue is not referred to in the findings or in the decree. A
motion for a new trial was made and denied, and the appeal is
from the judgment and order denying a new trial, and taken
by all of the defendants except Kettenbach. The plaintiff and
Kettenbach are respondents in this appeal, and the other de-
fendants are appellants, and we shall hereinafter refer to them
as plaintiff and defendants.

Counsel for defendants assign seventy-eight errors, and ask
for a reversal of the judgment, and that the court below be
directed to dismiss the action. Many of the assignments go
to the sufficiency of the evidence to establish said alleged con-
tract.

As before stated, this is a suit to compel the specific per-
formance of an alleged contract for the sale of real estate.
This court held in *The Prairie Development Co. v. Leiberg,*
*ante,* p. 379, 98 Pac. 616, that a parol contract for the sale of
land should be made out clearly and satisfactorily to the mind
of the court, and that a court of equity would not decree specific
performance of a contract for the sale of land if not clearly
established. (See, also, *Morrow v. Matthew,* 10 Ida. 423, 79
Pac. 196, and *Robbins v. Porter,* 12 Ida. 738, 88 Pac. 86.)
With this rule in view, we will proceed to examine the evi-
dence with reference to its sufficiency to sustain the findings of
the court.

It was alleged in the complaint that the defendant Burns
was the owner of said land, which allegation was denied by the
answers, and it was in the answers averred that Burns held the
legal title to secure an indebtedness due from one F. B. Waite.
Upon this issue, the only evidence offered by the plaintiff was
an abstract of title to said lands, showing that Burns held the
legal title, and the testimony introduced by the defendants on
that issue clearly shows that Burns, as trustee, held the legal
title to secure an indebtedness due from said Waite, and that
Waite was the owner of said land. There was no contradic-
tion whatever of that evidence, and under the well-established

rule, an absolute deed on its face may be shown by oral testimony to be a mortgage. The evidence was amply sufficient, and showed without contradiction or doubt that Waite was the owner of said land, and that the deed held by Burns was a mortgage and held as security. (1 Jones on Mortgages, secs. 282, 342; 2 Devlin on Deeds, 2d ed., sec. 1136; *Smith v. Smith,* 80 Cal. 323, 21 Pac. 4, 22 Pac. 186, 549; *Bartling v. Brasuhn,* 102 Ill. 441.) The contention that parol evidence is not admissible to show that a deed absolute upon its face is a mortgage cannot be maintained. The court therefore erred in finding that Burns was the owner of said real estate.

By the fourth finding, the court finds that on the 14th day of September, 1905, the defendant Burns, acting through his agent, Skinner, Mounce & Co., a corporation organized and existing under the laws of the state of Idaho, and doing a general business in real estate in buying and selling same and in acting as the agent in the purchase and sale of real estate, entered into a contract with the plaintiff for the sale by the said defendant Burns to the plaintiff Thompson of the land described in the complaint, containing 480 acres, at the agreed price of $48,000; that the terms and conditions of said sale were as follows: $500 was to be paid in cash on the 14th day of September, 1905, and the further sum of $14,500 was to be paid on the approval of the abstract of title to said premises by the plaintiff, and the remainder of the said sum of $48,000, to wit, the sum of $33,000, was to be paid by the plaintiff to the defendant Burns at the end of five years from the date of a deed, which was to be made by the defendant Burns to the plaintiff for said premises; that said $33,000 was to be evidenced by a promissory note and executed by the plaintiff to said Burns, and to bear interest at the rate of eight per cent per annum, interest payable semi-annually; payment of said note was to be secured by mortgage on said real estate to be executed by the plaintiff.

The court further finds in its fifth finding of fact that the plaintiff paid to defendant Burns said sum of $500 by putting it into the hands of said Skinner, Mounce & Co., and that thereupon said Burns, through his said agents, Skinner, Mounce & Co., agreed to deliver to plaintiff a good and suffi-

cient deed of conveyance, conveying and assuring the title of said land to the plaintiff. The court also finds that said Skinner, Mounce & Co. were fully authorized by said Burns to enter into and make said contract for the sale of said premises.

It is contended by counsel that said findings are not supported by the evidence. It will be observed from the foregoing that the complaint is based upon the theory that the land was owned by Burns, and that said contract was made with him through Skinner, Mounce & Co., as agents, and through the alleged agency of F. B. Waite. The record shows that so far as Skinner, Mounce & Co. had anything to do with this transaction, it was done through Eben Mounce, of that company, and Mounce testified in the case on behalf of the plaintiff, and it appears from his testimony that he met F. B. Waite in Portland and had a conversation with him about the land in controversy. He testifies that this land was listed with him for sale at that time; that there was no writing executed in regard to the matter; that he made a memorandum of the amount of each piece of land and the amount of money Waite wanted for it; that he did not hand Waite a copy of that memorandum. Said memorandum is as follows:

"480 Evans.
480 acres at 100.00.
160 in city $15,000.
Entire tract at $100.00.
220 on Evans bar $5000.
Palouse 160, 1200.
Randall, J. W.
200 acres near Juliaetta, $1200."

According to Mounce's testimony, the next thing that occurred in the way of communication between himself and Waite was that he (Mounce) wired Waite that he had sold the property to Thompson. He testified that he had no further communication with Waite until he sent said telegram. The telegram is as follows: "Lewiston, Idaho, Sept. 14, 1905.

"To F. B. Waite, Roseberg, Oregon.

"Have accepted five hundred dollars on sale of Evans place at one hundred dollars an acre. Send abstract.

(Signed) "EBEN MOUNCE."

The receipt given by Mounce for the $500 is set forth in the above statement of facts.   On the following day, Mounce wrote a letter to Waite in which he stated that he had "Sold the Evans place to parties in Spokane for $48,000; $15,000 cash and the balance to be agreed upon.   The parties will ask for five years' time and it will be thirty days before they can make payment."   He also notified him that he had accepted $500 and given a receipt for the same.   Upon the receipt of the telegram, Waite ordered the abstract forwarded to Lewiston.   On September 23, 1905, Mounce again wired Waite as follows: "Fifteen thousand to be paid on acceptance of abstract.   Parties ask five years' time on balance.   Will wire you when they return to town."   On October 11th, Waite wired Mounce as follows: "When will your parties be ready to do business?"   On October 12th, Mounce replied as follows: "Select your time and wire date."   On October 13th, Waite replied: "Case in court.   Will wire when can get away."   On October 19th, Mounce wired Waite as follows: "Parties ready to close.   Can you reach here October twenty-third?"   October 20th, Waite replied to that dispatch as follows: "Leave to-night for Lewiston."

It appears from the evidence that Waite arrived in Lewiston on Saturday evening, October 21st, but nothing was done until the following Monday, which was the 23d of October. At that time the plaintiff Thompson was out of town, but returned to Lewiston on October 27th.   On October 23d, it appears that Mounce and Waite went to the office of the Commercial Trust Co. of Lewiston, and there had an interview with a man by the name of Thomas.   Waite testified that he seemed to be in charge of the Commercial Trust Co.   It was then that Mounce informed Waite that Thompson was the purchaser of the land, but that as Thompson was out of town, he had left arrangements with Thomas to arrange with Waite the final details of this sale.   It appears that Waite was introduced to Thomas by Mounce, and Mounce there informed Thomas that Waite was the owner of the Evans tract and had come up to arrange the details of the sale to Thompson.   Thomas replied that he was sorry that Thompson was out of town, as this was his deal, but he thought that matters could be arranged all

right, and thereupon they went into the details as to the payments. Waite tried to get Thomas to agree to a ten thousand dollar payment in six months from the date of the first payment, and Thomas replied that he thought Thompson would pay for the entire tract within a year; that he, Thomas, did not understand why Thompson was willing to pay eight per cent per annum for any length of time, but that Thompson had only authorized him to agree to not less than three years' time, but in all probability Thompson would pay it sooner, but he did not want to be cramped for three years. Waite testified that after satisfying himself that he could make no better bargain, he finally consented to three years' time at eight per cent, interest payable semi-annually, and that after they had agreed to all of the details, Mounce and Waite walked down to the Western Union telegraph office where Waite wrote out a telegram, handed it to Mounce to read, then handed it to the operator, and paid the fee for sending the dispatch. The following is a copy of the dispatch:

"Lewiston, Idaho, October 23, 1905.
"William Mackenzie, Balfour, Guthrie & Company, Portland,
    Oregon.

"Send deed Evans farm to G. W. Thompson. Fifteen thousand cash, thirty-three thousand on or before three years. Interest 8 per cent semi-annual; mortgage, two notes, nine and twenty-four thousand. Send papers Commercial Trust Company bank.

"Dated this day. All papers to W. J. Burns.
                        (Signed) "F. B. WAITE."

Upon sending said telegram, the witness testified that nothing more could be done until the papers requested in said dispatch arrived in Lewiston, and that Mounce had been trying to sell some land for him up about Palouse City, and thereupon the witness, Waite, and Mounce took the train for Palouse City to examine said land, and aimed to get back about the time he expected the papers to arrive from Portland; that said papers arrived in Lewiston on the 26th of October, and that Thompson returned on the 27th and there Waite first met Thompson and was introduced to him by Mounce, and in-

formed Thompson that the papers were at the bank ready for execution or for delivery, and they went to the bank together and were taken by Mr. Clarke, the cashier, into the directors' room. Mounce, Thompson and Waite there examined said papers, and Thompson, after examining them, shoved the papers over to Waite and said: "I can't accept the terms in these papers—I can't accept them." And Waite replied that they were drawn as Thomas and he (Waite) had agreed upon; that Thomas had agreed to all the conditions contained in the papers. Thompson replied that Thomas had no authority from him to agree to a less time than five years for the first payment and that he would not pay but seven per cent interest. Waite again said Thomas had agreed to three years, and Thompson again replied that Thomas had no authority to make any such agreement, and said: "Why, of course, if you don't want to let me have the land, why I have no claim to the land. It is just a matter of business between you and I. The people up in this country think I am crazy to pay any such price for this land anyway, and on my part it is only a gambling proposition. I was willing to take chance on $15,000 on this land, and if the price goes up and this country advances as I think it will, I expect to pay for the land. If it doesn't and goes down, I simply lose my $15,000, and don't want to make any other arrangements."

Thereupon the parties left the bank and went over to Thompson's office. Waite testified that he was very anxious to sell the land and was still trying to agree on some of the objections raised by Thompson; that, where he objected to the form of the deed, Waite was willing to arrange with Burns to give him (Waite) a deed for the property and then he (Waite) would give a warranty deed to Thompson. While they were talking in Thompson's office, Thompson wrote out a list of eight objections to said deed and mortgage, which objections are as follows:

"1st. Time of mortgage 5 years, on or before, at 8 per cent.

"2d. Mrs. Thompson will sign mortgage but not notes.

"3d. The mortgage is not an actual loan but a purchase money mortgage.

"4th. Interest annual, not semi-annual.

"5th. The second covenant of mortgagor in mortgage regarding giving up premises during possible foreclosure proceedings shall be stricken out.

"6th. Warranty deed to be furnished with full consideration expressed in deed.

"7th. Will not agree to pay taxes on notes or mortgage.

"8th. Notice of date of payment of notes shall be given mortgagor ten (10) days before due."

Mr. Thompson testified that he made a copy of said objections, which he kept, and during his examination as a witness produced the same, which is as follows:

"1st. Time of mortgage. Should be 5 years instead of 3 years.

"2d. It is not necessary for my wife to sign mortgage and notes but I will have wife sign mortgage.

"3d. This mortgage is not an actual loan and I shall not sign such a statement.

"4th. Interest should not be more than 7 per cent. and not semi-annually but annually. Will pay 8 per cent annual interest.

"5th. The mortgage provides in case of foreclosure that mortgagor shall give up possession of premises at once and during time of redemption; which I shall not agree to.

"6th. Quitclaim deed. I require a warranty deed.

"7th. Taxes shall be paid by grantor for 1905.

"8th. Will not agree to pay taxes on notes."

It will be observed from an examination of these two papers that there is a very material difference in some of the objections.

It appears that at close of said interview, Waite put said objections in his pocket and said: "I told him it was a matter out of my hands, that I could not agree to these kind of terms and the terms he proposed." They thereupon separated and Mounce and Waite went to see defendant Kettenbach, and thereafter, on the same day, Waite went to the telegraph office and sent the following telegram to William Mackenzie at the Portland office: "Will arrive Portland Monday morning. Deal off. (Signed) F. B. Waite." Waite thereupon returned to Portland and handed the objec-

tions to the deed and mortgage that had been written out by Thompson to Mackenzie who had charge of a department of the office of Balfour, Guthrie & Co., of which company Burns was a partner.

Thereafter negotiations were begun by Walter F. Burrell on behalf of the defendant, the Lewiston Land & Water Co., with said Burns and Mackenzie, for the purchase of said real estate. These negotiations began shortly after Waite had returned to Portland. This real estate was offered to the defendant Land & Water Co. for $48,000, and abstracts were furnished the company, and the company offered to take the property for $48,000. They were requested to pay something down on the deal, which Mr. Burrell refused to do, and those negotiations were declared off. On the morning of the 14th of November, Mackenzie telephoned to Burrell and inquired whether he was satisfied with the title, he having examined the abstracts, and he said he was and was willing to take the land at $48,000; but Mackenzie told him that he could not have it for less than $50,000, and he thereupon told Mackenzie that he would take it at that price and would call around in the afternoon and make a payment of $25,000 cash, which he did. Thereupon the proper conveyances were made from said Burns and wife and Waite and wife. A mortgage was executed by the Land & Water Co. to secure the payment of $25,000, which mortgage was thereafter assigned to the defendant Kettenbach. It appears that the first negotiations with the Land & Water Co. for the sale of said land terminated about the 3d or 4th of November, Burrel having refused to pay down a certain amount of money. The next move of Waite in an effort to sell said land was the sending of the following telegram to Mounce at Lewiston:

"Portland, Oregon, November 4th.

"E. Mounce, Lewiston, Idaho.

"Can arrange with house to handle paper if Thompson will consent to semi-annual interest. Interview him. Answer quick."

(Signed) "F. B. WAITE."

It appears that Mounce received said telegram on the 4th of November, and, as Thompson was not in Lewiston, failed

to interview him, and wired Waite that Thompson was out of the city. Thompson did not return to Lewiston until the evening of the 9th of November. It further appears that on or about the 12th of November, Waite received a telegram from Mounce, dated November 11th, stating that Thompson would consent to semi-annual interest. Before receiving that telegram, it appears that negotiations were again opened with the land and water company, which resulted in a contract for the sale of the land to that company on the 13th or 14th of November. The deed from Waite and wife to said company bears date of November 13th, and that of Burns and wife to said company, November 14th. On November 18th, Thompson claims to have made a tender to Skinner, Mounce & Co. and the First National Bank of Lewiston of the sum of $14,500, together with a mortgage upon said premises for $33,000 and his promissory note, payable in five years, with interest at the rate of eight per cent, payable semi-annually, and demanded a compliance with the alleged contract on the part of Burns. It appears from the record that at the time said pretended tender was made, neither Skinner, Mounce & Co. nor the First National Bank of Lewiston was the agent of said Burns, nor the custodian of the deed to said premises, as the deed and mortgage that had formerly been sent to said bank had been returned to Burns after its rejection by Thompson. The evidence clearly shows that the only authority said First National Bank had was to deliver the deed and see that Thompson properly executed the mortgage according to the letter of instructions that accompanied them, and it clearly appears from the evidence that the only authority that Skinner, Mounce & Co. had was to find a purchaser. They had no authority in the matter after the negotiations were broken off on October 27, 1905. Said tenders and offers were therefore not made to parties that had any authority in the matter whatever. The letter of instructions accompanying said deed and mortgage is as follows:

                    "Portland, Oregon, October 25, 1905.
"First National Bank, Lewiston, Idaho.

"Dear Sirs: We wish to avail ourselves of your services as intermediary in carrying through delivery of documents be-

tween Mr. W. J. Burns of this city and Mr. G. W. Thompson of yours. We hope that we are correct in our understanding that you undertake such business.

"It has been stated to us that the latter gentleman has engaged himself to purchase 480 acres of land, known as the Evans Farm, situated near Lewiston; and conforming to instructions from interested parties, we herewith enclose a deed from Mr. W. J. Burns and wife in favor of Mr. G. W. Thompson, for this land.

"The abstract of title to the property is in the hands of Mr. Thompson. Will you be good enough to notify him that you are required by us to call for it, continued to the hour of delivery to you, and to see to it that there are no liens, encumbrances or any matter whatever upon the records against Mr. Thompson and wife which would attach to this land instantly upon the title being vested in one or both of them. If necessary you can employ an attorney, at our expense, to assist you in this connection. We enclose also a mortgage, two principal notes, aggregating $33,000, and six interest notes which are to be executed and signed respectively, as customary under the laws of your state, by Mr. Thompson and his wife, Mrs. Emma R. Thompson.

"We authorize you to deliver the deed to Mr. Thompson upon a satisfactory showing of title, as already prescribed, in exchange for the mortgage duly executed, and the notes duly signed, and an exhibit to you by Mr. Thompson, of a receipt from one F. B. Waite, for $2,500 cash, and for $12,500 in Portland exchange, in favor of Mr. W. J. Burns.

"Will you be good enough to place the mortgage with the proper recording official for immediate filing, with instructions to dispatch to us when recorded; and to send us the notes; also the abstract of title continued to include filing of the mortgage; and the recording official's receipt for the mortgage, at your earliest convenience.

"We will promptly remit your outlay for fees and for your own services immediately upon hearing from you.

"If anything occurs as an obstacle to the transaction, as outlined, being carried through, kindly wire us at our expense.
"Yours faithfully,
"BALFOUR, GUTHRIE & CO.,
"W. MACKENZIE."

At the same time a letter of the same tenor and effect was addressed to the plaintiff, advising him that the deed and mortgage had been forwarded to the First National Bank, the deed to be delivered to him upon the execution of the notes and mortgage and the payment of $15,000. Considerable stress is placed upon the fact that said deed and mortgage were sent to the bank for delivery and execution, and it is earnestly contended by the plaintiff that this was a ratification of the contract of sale theretofore made. We cannot concur in that contention, for the reason that it was strenuously urged by plaintiff that said deed and mortgage were not in accordance with the contract made, and hence he rejected them; while it is contended by the appellants that said deed and mortgage was in strict compliance with the details of the arrangements made between Thomas, on behalf of the plaintiff, and Waite, on behalf of Burns, at their interview above referred to as having been held on the 23d of October, and at the conclusion of which Waite wired Mackenzie at Portland to have those papers drawn and forwarded to said First National Bank at Lewiston. We are unable to understand how the sending of said deed and mortgage to said First National Bank, in compliance with the arrangements and details agreed to by Thomas for the plaintiff, could be construed into a ratification of a very different contract that Thompson claims he made with Waite, and his repudiation of any authority in Thomas to represent him in any way in regard to the purchase of said land. Counsel for respondent cites some authority on the proposition that when a principal adopts the unauthorized acts of an agent, he thereby ratifies the same; but those authorities have no application here whatever, for the reason that Burns did not adopt the acts of any agent of his by the execution of said deed and the sending of said papers to the bank, except so far as such acts conform to the letter of instructions accompanying said deed and mort-

gage, which letter distinctly and clearly set forth the conditions upon which the deed was to be delivered, and those conditions were not such as plaintiff claims were embodied in his contract with Waite.

It is alleged in the complaint that the contract for the sale of said land was entered into on September 14, 1905, and it is admitted in the brief of counsel for plaintiff that the contract was not finally consummated or completed until the 27th of October, instead of on the 14th of September, as found by the court, and the evidence clearly shows that it was not consummated before October 27th. And the testimony of Mounce, the plaintiff, and Waite as to what occurred at the interview held between Thompson and Waite on the 27th of October is very conflicting. Thompson and Mounce testify that Waite agreed to have the deed and mortgage drawn in conformity with the eight objections above referred to, as written out by Thompson; while Waite testifies that he never agreed to do so. The record shows that immediately after said conversation occurred, Waite went to the telegraph office and wired to Mackenzie that the deal was off. It was remarkable that Waite should agree to have the papers drawn in conformity with Thompson's objections and immediately wire that the deal was off. And further than that, Thompson testified that he stated to Waite during the conversation had on the 27th of October, as follows: "Mr. Waite, my objections I will put in writing, so you can take them to Burns. . . . . He said he would do it." Why take them to Burns if Waite had authority to conclude the contract and did conclude it? This testimony goes to show that the contract was not completed at that time. On cross-examination, testifying in regard to this matter, the plaintiff stated, referring to Burns giving a warranty deed, "I told him that if Burns would not give a warranty deed, that he could get this sort of a deed and give me a warranty deed, and he said that could be done —he would undertake to do it or see that it was done, one of the two things." He further testified as follows: "When we talked about this matter in closing this in my office, Mr. Waite was agreeable to closing it with the suggestions I had

made. If he had been a party in interest, we could have come to an understanding and closed it in fifteen minutes. He could not do it, he said, because he had to go back and have it arranged with Burns. . . . . Because he stated there that he would have to put these objections up to Burns, did not necessarily make me think that Burns was the principal. . . . . He apparently, independently from Burns, could not act, and he said he would have to go back and have them corrected and have the papers drawn accordingly."

The evidence clearly shows that the plaintiff understood and knew that Waite did not have the authority to close the transaction without consulting Burns, and it is clear from the evidence that no contract, at least one that could be enforced, was consummated between the plaintiff and Burns on October 27, 1905, as claimed by counsel for plaintiff in their brief and as stated by them on their oral argument. The testimony given by plaintiff himself on this point is conclusive that the agreement to sell was not concluded on the 27th, without resort to the positive testimony of Waite to the effect that it was not concluded on that day, or at all. But, it is contended that if the contract was not closed on the 27th of October, it was closed on the 10th or 11th of November when Mounce advised Waite by telegram, in response to Waite's telegram of the 4th of November, that Thompson would pay interest semi-annually. It is contended by counsel that the telegram of the 4th of November, which requested Mounce to interview the plaintiff and ascertain whether he was willing to pay interest semi-annually and "answer quick," was a proposition to sell, and held good until it was withdrawn by Waite. There is nothing in that contention, as said telegram was only an inquiry and not an offer; and for the further reason that Thompson did not "answer quick," as he did not answer said telegram until six or seven days after Waite's telegram was received in Lewiston by Mounce. Clearly, said telegram did not contain an offer, and was simply a request for information which Waite might use in determining the advisability of his future course; at least, it was based on the fact as to whether he could handle the five-year paper. In reply to the telegram of November 4th, Mounce

advised Waite by telegram dated that day that he could not interview Thompson as he was out of town, and if it be conceded that said telegram was an offer, it was not answered "quick," and had spent its force when Mounce replied that he could not interview Thompson as he was out. of the city. The telegram demanded a quick answer, and a quick answer was given to the effect that Thompson could not be interviewed. This closed that incident. Mounce had no authority to do anything under said telegram but to interview the plaintiff and "answer quick." He answered quick, and Waite did not see fit to ask Mounce to do anything further in the matter.

Counsel contend that said telegram was an offer, and that the same was open for acceptance for a reasonable time, and the acceptance of November 11th was made within a reasonable time. The general rule is that an offer is open for acceptance for a reasonable time or until withdrawn, but if the offer itself limits the time for acceptance, if not accepted within that time, the offer is considered ended or withdrawn. The person making the offer may specify any conditions that, he may think best as to the time within which the offer shall be accepted. It appears from the record that the value of said land was uncertain and fluctuating, and the telegram of November 4th requested. an answer quick. And even if it were not, Waite had the right to limit the time that the offer would be left open. It is well established by reason and authority that an offer to sell must be answered within the time specified. In *Minn. Linseed Oil Co. v. Collier White Lead Co.*, 4 Dill. 431, 17 Fed. Cas. 447, Fed. Cas. No. 9635, an offer was made by telegram on Saturday, July 31, 1875, requesting a prompt answer, and delivered to the defendant Monday morning, August 2d, between 8 and 9 o'clock, and the acceptance was wired on August 3d, at 8:53 A. M. It was held that the acceptance was not within a reasonable time. The court said, after stating the rule:

"Applying this rule, it seems clear that the intention of the plaintiff, in making the offer by telegraph to sell an article which fluctuates so much in price, must have been upon the understanding that the acceptance, if at all, should be imme-

diate, and as soon after the receipt of the offer as would give a fair opportunity for consideration. The delay here was too long, and manifestly unjust to the plaintiff." (See, also, *Ortman v. Weaver,* 11 Fed. 358.)

In *Bowen v. McCarthy,* 85 Mich. 26, 48 N. W. 155, the court said:

"It is next insisted that defendant did not withdraw his offer before the final and full tender was made. No legal obligation rested upon him to withdraw the offer after the expiration of the reasonable time within which complainant should have accepted. It is not disputed but that such reasonable time had expired at the time of the tender." (*Larmon v. Jordan,* 56 Ill. 204; *Maclay v. Harvey,* 90 Ill. 525, 32 Am. Rep. 35.)

Clark on Contracts, at page 40, says:

"An offer by telegraph impliedly requires an answer by telegraph, and an answer by mail will not be sufficient. . . . . An offer by telegraph specifying no time for answer would, from the manner in which it is sent, require an immediate reply by telegram." (*James & Sons v. Marion Fruit Jar & Bottle Co.,* 69 Mo. App. 207.)

If a request by telegram to "answer quick," as in the case at bar, could be delayed for six or seven days without acceptance, the person to whom the offer is made might absent himself from home and continue to stay away for some length of time and then take advantage of the offer. Upon this theory, the limitation specified in the offer would have no force and effect and be of no avail. The person to whom the offer was made could nullify the limitations placed in the offer and extend his time to accept it to almost any period that he might see fit to remain away from home. It is clear from reason and authority, under the facts of this case, even conceding that said telegram was an offer, that it was not accepted within a reasonable time after the receipt of the telegram. We have no doubt but what the plaintiff testified to the facts as he remembered them; but his testimony only shows how uncertain and unreliable the memory of man is. The plaintiff stated on his direct examination that said telegram of the 4th of November was answered by him on the

4th or 5th (the day it was received or the day after), stating that he would agree to semi-annual interest. On cross-examination he confirmed that testimony, stating that he was sure enough of the fact that he answered it immediately, "to take the chances of perjury." The court at that stage of the proceedings took an adjournment until the following morning. The plaintiff thereafter admitted that he was mistaken in regard to the time when he answered said telegram. He testified that he was away from Lewiston from the 4th until the evening of the 9th or 10th of November, and that he did not answer said telegram until the 10th or 11th of that month. And again it appears that his recollection was uncertain in regard to the authority he had given Thomas to act for him in the matter, swearing positively at first that he had given him no authority. On being cross-examined, he finally stated that he had given Thomas no written instructions, and in effect stated that he might have given some instructions, and finally, that he was not sure just what instructions he did give to Thomas. This shows the uncertainty and forgetfulness of the plaintiff's memory.

This case clearly shows the necessity of contracts being in writing where they concern real estate, and the legislature of this state, knowing the uncertainty which would attach to titles to real estate if they rested in the memory of man, in parol evidence, has wisely enacted what is known as the statute of frauds under the head of "Indispensable Evidence." Sec. 6007, Rev. Stat., is applicable to the facts in this case and is as follows:

"No estate or interest in real property, other than for leases for a term not exceeding one year, nor any trust or power over or concerning it, or in any manner relating thereto, can be created, granted, assigned, surrendered, or declared, otherwise than by operation of law, or a conveyance or other instrument in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by his lawful agent thereunto authorized by writing."

The rule established by that statute the legislature considered necessary for the security of property and titles, and it

has become a well-established rule both in this country and in England.

This court held in *Phelps v. Good, ante,* p. 76, 96 Pac. 216, which was an action for specific performance of an alleged contract for the sale of real estate, that in order to constitute a contract, there must be a common understanding between both parties; their minds must meet as to all its terms, and if any portion of the proposed terms is unsettled and unprovided for, there is no contract; and that an acceptance of an offer to be effectual must be identical with the offer and unconditional, and must not modify or introduce any new terms into the offer.

In *Patt v. Gerst,* 149 Ala. 287, 42 South. 1001, the court had under consideration a contract for the sale of real estate alleged to be based on letters and telegrams. The court there held that to comply with the statute of frauds, the writing required thereby must state the contract with such certainty that its essentials will be known from the memorandum itself or by reference contained in it to some other writing, without recourse to parol evidence.

In *Mertz v. Hubbard,* 75 Kan. 1, 121 Am. St. Rep. 352, 88 Pac. 529, the court had under consideration the specific performance of a contract for the sale of real estate, which involved an agency and the statute of frauds, and it was there held under the statute of frauds that where a written agreement for a sale of real estate shows that one of the two persons by whom it is made incurs no individual liability, but acts merely as the agent of someone else who is not named or described, a specific performance thereof cannot be compelled at the suit of the principal if his relation to the transaction can only be proved by parol evidence.

It appears from the record that Skinner, Mounce & Co. had no written authority whatever from either Burns or Waite to sell said real estate. It appears that at the time Mounce had his conversation with Waite at Portland early in September, 1905, Mounce made the memorandum above set forth, which is very indefinite, to say the least, and fails to specify the terms on which said real estate would be sold, and is not signed by anyone, and is not sufficient to bind

Waite or Burns. The said memorandum was made in a small book kept by Mounce, and Waite testified that he had never seen it. Mounce also testified that at the first conversation he had with Waite in Portland in regard to this land, Waite listed it with him for sale, and the talk was general about the land as to the amount he asked for it, the amount he wanted paid down; that he wanted $100 an acre for the land and wanted eight per cent interest on deferred payments, and that he didn't remember all of the specifications; that Waite listed the land with him for sale; that he meant by "listing" that Mounce could go and sell it if he could find a buyer, and testified: "He certainly gave me authority to close the deal and deed it over and take the purchase money. If he gave me authority to sell it, he certainly gave me authority to take the money. . . . . He said to me, 'If you can find a buyer for that piece of ground, take $100 an acre. I will take so much down and give the man who buys it a chance to take the balance out of the ground.' " From this testimony of the witness, it appears that he understood from the conversation he had with Waite that he could sell the land at $100 per acre, take the money and deed the land over to the purchaser, although he had no power of attorney nor any writing of any kind from Waite. This evidence only emphasizes the fact that it is very easy for a land agent to misunderstand and misapprehend the power that he has under an oral authority to find a purchaser or to sell land, and emphasizes the necessity of the rule established by the statute of frauds. Mounce had no written authority.

The receipt that Mounce gave to Thompson for the $500 paid at the time he claims to have sold said land to Thompson states, among other things, that $15,000 is due on the approval of the abstract, and balance to be paid at the expiration of five years from date of deed. The record shows that neither Burns nor Waite knew anything about that receipt until this suit was commenced. In Mounce's letter following his telegram to Waite, which telegram advised Waite of the sale, he stated that he had "sold the Evans place to parties in Spokane for $48,000; $15,000 cash and the balance to be agreed upon. The parties will ask for five years' time, and it

will be thirty days before they can make the payment.''
Mounce, while on the witness-stand, explained what he meant
in said letter by stating that the ''balance to be agreed upon''
was that the interest was to be agreed upon. Further on he
testified as follows: ''It was not left open to adjustment in
reference to time, nor rate of interest, and the security, if
any, to be given for the $48,000. . . . . If there was to be
any other arrangements, he and Waite could make it them-
selves. I had closed up my end so far as I was concerned.''
This last statement is to the effect that he had found a pur-
chaser and had closed up the transaction so far as he was
concerned; that Thompson had agreed to pay eight per cent
interest on the deferred payment; and still, when Thompson
and Waite met on the 27th of October, he insisted upon pay-
ing only seven per cent, although Mounce claims that he
had agreed with him to pay eight. This letter and the re-
ceipt would in no manner bind Burns under the facts of
this case. The receipt does not state the rate of interest to
be paid, and Thompson denied that he was to pay eight per
cent, contending that he would only pay seven.

Thus it clearly appears that no definite contract was made
for the sale of this land up to and including the 27th of
October, or at any time thereafter. The item of interest at
eight per cent on $33,000 was an important matter to be
adjusted, as the interest for five years at that rate would
amount to $13,200. The time for the payment of said
$33,000 was also an important matter, as it is clear from the
record that the land belonged to Waite and that Burns held
the legal title simply to secure an indebtedness owing by
Waite, and before Waite could sell the property, he would
necessarily have to make some arrangement with Burns, trus-
tee, for the liquidation of that indebtedness; and he evidently
was attempting to do that in trying to arrange the payments
of the $33,000 at times and in a manner to satisfy said trustee.
It is clear that the minds of the parties never met, and that no
definite and certain contract for the sale of said land was ever
entered into between them.

It is alleged in the complaint, and found as a fact by the
court, that Waite was an agent of Burns for the sale of the

land in controversy, and that as such agent he authorized Skinner, Mounce & Co. to sell said land for Burns. No written authority of the agency has been shown, neither to Waite nor to Skinner, Mounce & Co. As such agency was denied, it was necessary, under the provisions of said sec. 6007, Rev. Stat., to show such agency by an instrument in writing subscribed by the owner of the land. (See 1 Reed on Statute of Frauds, sec. 308; *Borderre v. Den,* 106 Cal. 594, 39 Pac. 946; *Hall v. Wallace,* 88 Cal. 434, 26 Pac. 360.)

Conceding that the plaintiff was entitled to judgment in this case, it is contended by counsel for appellant that the decree is erroneous in a number of very important particulars which would of necessity require its reversal. The following provisions of said decree are claimed to be clearly erroneous, to wit:

"That upon delivery by the defendants, Walter J. Burns and Mary C. Burns, his wife, of said deed to the clerk of the above-entitled court for plaintiff, service upon plaintiff or plaintiff's attorneys, or either of them, of notice in writing that said deed has been delivered, and an unconditional acceptance of the fourteen thousand five hundred dollars, that the said plaintiff shall within thirty days thereafter pay to the clerk of the above-entitled court for the defendant, Walter J. Burns, the said sum of Fourteen Thousand Five Hundred Dollars, and deliver to the said clerk for the said Walter J. Burns, the said promissory notes and the said mortgage referred to, and upon failure of the said plaintiff to deliver the said Fourteen Thousand Five Hundred Dollars, and the said promissory notes and the said mortgage at the time heretofore stated, this judgment to become void and be of no further force or effect, and the plaintiff's complaint stand dismissed."

The plaintiff has alleged that he was able, ready and willing to comply with his part of the alleged contract. That provision of the decree gives the plaintiff an option as to whether he will comply with the decree or not. It requires Burns and his wife to deliver a deed to the clerk and to notify plaintiff or his attorneys in writing that said deed has been delivered, and that the $14,500 therein provided for is un-

conditionally accepted, and after that occurs, the plaintiff is given thirty days in which to pay said $14,500 and deliver to the clerk for said Burns the promissory notes and mortgage provided for in said decree, and in case he fails to do so, said judgment and decree becomes void and without force or effect; and it is provided that in case those events happen, *"the plaintiff's complaint stands dismissed."* After the defendant Burns had complied with his part of the decree, the plaintiff is given thirty days in which to comply with his part of the decree, and if he neglects or fails to do so, then the judgment is reversed and turned into a judgment of dismissal. This decree leaves the matter at the caprice and whim of the plaintiff. If the value of the property has decreased, or if for any other reason he does not care to comply with his part of the contract, the decree authorizes or permits him to decline to proceed further in the matter. The judgments and decrees of courts in cases like that at bar must be certain and sure, and it must not be left with either party to the suit to defeat its provisions.

In *Thayer v. Wilmington Star Min. Co.*, 105 Ill. 540, the court had under consideration a decree containing some optional provisions like the one at bar, and the court said:

"He was entitled, as before said, to have payment of it as soon as the decree was rendered . . . . and in default of payment at the day, all right and interest of appellee or Benson in the land, under the contract, should have been forever extinguished."

The defendants at bar have been put to the expense of this litigation, and if the plaintiff is permitted, after he has recovered a judgment and thereby clouded the title of the land in dispute, to say that he will not perform his part of the judgment by him to be performed, he will be permitted to do something that ought not to be permitted by any court of justice, and this he may do if by the terms of the judgment it is left optional with him whether he will perform his part or not. (*Binns v. Mount*, 28 N. J. Eq. 24.)

In *Stevenson v. Jackson*, 40 Mich. 702, which was an action for the specific performance of a contract, the court held that when specific performance was decreed in favor of one

who is still owing something on the contract, he should be ordered to bring the amount into the court for the party entitled to it.   When a decree is based on a certain contract and requires its specific enforcement, it must require the performance of the contract by the plaintiff as well as the defendant. In fact, when specific performance of a contract is decreed, the contract is merged into the judgment, and the judgment must not be so entered as to leave it optional with the plaintiff whether he performs his part or not.   A plaintiff having asked the intervention of a court for the specific performance of a contract, the decree must be such as will not permit the plaintiff to back out after he has secured the decree.   A decree for specific performance is not, and is not intended to be, an option that can be held for speculative purposes over the title of valuable property.

It will not be necessary for us to pass upon the other question raised by the assignment of errors, as the judgment must be reversed for the errors above passed upon.   The evidence is insufficient to sustain the findings of the court and the judgment, and therefore the plaintiff is not entitled to a specific performance of the alleged contract.

The judgment must therefore be reversed, and it is so ordered, and the cause remanded with instructions to the lower court to enter a judgment of dismissal of the action. Costs are awarded to appellants.

Ailshie, C. J., concurs in the conclusion only.

Stewart, J., concurs.